## THE PIONEER.

### McNEIL et al. v. THE PIONEER.

*(District Court, D. New Jersey. December 12, 1892.)*

1. **MARITIME LIEN—WAIVER.**
   An agreement to accept, in payment for certain machinery furnished a steam tug under a written contract, a promissory note, payable four months after date, does not in itself constitute a waiver of the lien against the tug for the contract price, especially where it is not claimed that any such waiver was ever contemplated by the parties.

2. **SAME—ADMIRALTY PRACTICE—PREMATURE FILING OF LIBEL.**
   When such promissory note is not delivered in pursuance of the agreement, the filing of a libel before the fulfillment of the contract on libelant's part (which, however, is fully performed soon after) does not constitute cause for dismissing such libel, but, under admiralty practice, affects the question of costs only.

In Admiralty. Libel by Robert McNeil and others against the steam tug Pioneer for the contract price of a boiler and flues furnished to her. Decree for libelants.

Alexander & Ash, for libelants.
R. B. Seymour, for claimants.

GREEN, District Judge. The libel in this case was filed to enforce the payment of a claim against the steam tug Pioneer, consisting practically of two items; the first being the contract price agreed upon by the claimants, or those who represent them, for a boiler to be built and properly set in the Pioneer by the libelants, amounting to $1,250; and the other being the price of a new and extra set of flues, which, while not included in the original contract for the boiler, seem to have been necessary for the proper repair of the Pioneer, and to have been accepted as such by the claimants, and which amounts to $74.93. The claimants resist the enforcement of this lien, although they do not dis-

pute the amount of the two items, upon the ground that, by a special contract entered into between those who represented them and the libelants, the libelants were to accept, in payment of their claim, a promissory note, of a certain specified character, payable four months after the completion of the work; and that the legal effect of this contract was to work a waiver of the lien which otherwise libelants may have had upon the Pioneer. As is usual in such cases, there is a contrariety of evidence; but, after carefully weighing all that has been offered, I have reached the following conclusions, and think they are sustained by the weight of the testimony:

It is not disputed, apparently, that the libelants entered into a contract about June 26, 1891, in writing, with "Townsend & Co.," to build and properly set in the tugboat Pioneer a steam boiler of a certain specified dimension, for the sum of $1,250. Mr. Jarvis Underhill, one of the owners of the steam tug Pioneer, and a Mr. Townsend, who seems at that time to have had no interest in the tug, were brought to the business place of the libelants by a Mr. Jones, who knew them previously, and who introduced Mr. Underhill and Mr. Townsend in such a manner that the libelants presumed they were the owners of the tug Pioneer. After some conversation in reference to the furnishing of the boiler, the libelants agreed, in writing, to build and place in the tug the boiler in question. Nothing was said in this written contract as to the terms of the payment, but the libelants admit that they were to receive in payment of their claim a promissory note, to be made by Townsend & Co., and to be indorsed by a responsible indorser satisfactory to them, payable four months after the completion of the work. It turns out that there was a firm of Townsend & Co. in existence at that time, composed of Solomon S. Townsend, Maurice E. Townsend, and Edward M. Townsend; but this firm had no interest whatever either in the said contract, or in the said tug, nor was such firm known to the libelants. The relationship between Underhill and Townsend seems to have been one of friendship only.

The boiler was built, and set properly in place on the tug, and completely finished, about the 19th day of December, 1891. Some time previously, about the 8th of October, 1891, the libelants heard rumors that the Pioneer had been seized by the marshal of this district, at the instance of other creditors; and, becoming alarmed at the prospect of not obtaining their money for their work and labor, filed their libel on that day in this court to enforce payment of their claim. It is quite clear that the filing of the libel at that time was premature. The libelants had no claim against Townsend & Co., or against the tug itself, until they had completely fulfilled the contract into which they had entered; and if, at any time since the filing of the libel, the claimants or Townsend & Co. had, in fulfillment of their part of the contract, tendered to the libelants a promissory note, with a responsible indorser, for $1,250, payable four months after date, according to the terms of the bargain, I should have no hesitation whatever in dismissing this libel. But I think it is clear from the evidence that neither the claimants, nor Townsend & Co., nor any one on behalf of either of them, have ever tendered to the libelants, in fulfillment of their part of the contract, the note their contract called for; and that

the right to libel has since the 19th day of December, 1891, been vested in the libelants. Had it been filed not until then, it would have been properly filed, as far as time is concerned. But the premature filing of a libel, if the right to libel accrues afterwards, and before the determination of the issue, affects the question of costs only. It is not necessary, nor is it the practice in admiralty, to dismiss such libel if, when the matter is presented to the court for final determination, it appears that the right to libel exists.

Nor does the mere fact that the libelants agreed to accept a note payable four months after date for the amount of their claim necessarily constitute a waiver of their lien. It is well settled that such waiver must be proved by positive and direct evidence. In this case there seems to be no pretense that any such waiver was ever spoken of or considered. The facts, on the other hand, would lead to a different conclusion. Mr. Underhill and Mr. Townsend, who were, until they were introduced by Mr. Jones, entire strangers to the libelants, could hardly expect that the libelants would accept from them a promissory note in payment of their claim as an entire waiver of the libelants' right to look to the boat itself for the amount due. Even if the note had been tendered in pursuance of the contract, and had been accepted by the libelants, if it had not been paid when due, the libelants could undoubtedly resort to their lien in admiralty. It is not necessary to cite cases sustaining this principle.

I think it is clear from the testimony, and from all the circumstances, that in this case there was no waiver of lien. No objection has been urged or made as to the workmanlike manner in which the boiler was built and placed; nor any criticism or complaint that the libelants have not fairly and honestly fulfilled their contract. The default exists only upon the side of the claimants. They have paid nothing upon the contract price except the sum of $200. The balance is due and owing. Under the circumstances in this case, I think the libel should be sustained, but, as I have previously stated, it was filed prematurely; hence the libelants must be denied costs. The libel is also sustained for the claim of $74.93, the price of the extra flues which were put in the Pioneer. No objection seems to be made to this part of the claim. Let the usual decree be entered.