NORTHROP et al. v. MERCANTILE TRUST & DEPOSIT CO. OF BALTIMORE, MD.

(Circuit Court, D. South Carolina. January 20, 1903.)

1. AMENDMENT OF COMPLAINT—CAUSE OF ACTION ARISING AFTER SUIT BROUGHT.
    Under the Code of Procedure of South Carolina, the complaint, in an action for a breach of a contract, cannot be amended by alleging a second breach occurring after the action was commenced, and asking damages also for that.

2. CONTRACTS—RIGHT OF ACTION FOR BREACH—REPUDIATION BEFORE TIME FOR PERFORMANCE.
    The refusal of one party to an executory contract, containing interdependent obligations to be performed by each party at different times, to recognize or be bound by such contract, authorizes the other party to treat it as terminated, and to bring suit for its breach at once, although the time for performance of some of the conditions by defendant has not arrived.

3. AMENDMENT OF COMPLAINT—ACTION FOR BREACH OF CONTRACT.
    The complaint, in an action for breach of a contract, by the failure of defendant to pay an installment due thereunder, there being other obligations not matured, may be amended to ask damages for breach of the entire contract, where the amendment shows the contract to have been executory, and alleges that prior to the suit defendant had repudiated the same and refused to be bound thereby.

At Law. On motion for leave to amend complaint.

J. P. K. Bryan, for plaintiffs.

Mordecai & Gadsden, for defendant.

SIMONTON, Circuit Judge. This case comes up on a motion to amend the complaint, answer having been filed and served. The original complaint, after setting out the jurisdictional fact, proceeds as follows:

That on the 26th day of September, 1901, the above-named defendant made and entered into a contract with plaintiffs, a copy of which is hereto attached and made a part of this complaint, whereby defendant above named promised and agreed, in the event of the purchase or reorganization by defendant of the Charleston Waterworks, a corporation created by and existing under the laws of the state of South Carolina (referred to in contract attached as Charleston Waterworks Company), as a result of recent and pending investigations by defendant and of certain negotiations, to pay to plaintiffs the sum of ten thousand dollars ($10,000) in cash, and to deliver to them fifty-five thousand dollars ($55,000), par value, of stock in a proposed new company, or in the Charleston Waterworks reorganized, and promised and agreed to pay over the said $10,000 in cash to plaintiffs at the time defendant should pay for the securities or property of the Charleston Waterworks, and to deliver to plaintiff said $55,000 of stock of the new or reorganized company as soon as the same was issued, said sum of money and said amount of stock to be full compensation to plaintiffs for services heretofore rendered and to be rendered by them. That as a result of said investigations and negotiations the defendant above named has purchased Charleston Waterworks, and paid for the securities and property of same. That plaintiffs have in all respects and at all times performed all services they were called upon to render by said defendant, and have completely executed the contract on their part. That plaintiffs have demanded payment from defendant of the sum of $10,000, but same has been refused.

The prayer for judgment is for $10,000, with interest from day of June, 1902, the date on which defendant paid for the securities of said Charleston Waterworks, and the costs of the action.

The proposed amendment follows the original complaint in totidem verbis, and proposes to add the following:

"That plaintiffs have demanded from defendant the delivery of fifty-five thousand ($55,000) dollars of stock of the Charleston Light & Water Company, the new company, which was acquired and its capitalization reorganized for the purpose of taking over the Charleston Waterworks, and the delivery of said fifty-five thousand ($55,000) dollars of stock in the Charleston Light & Water Company has been refused by defendant. That the value of the said fifty-five thousand ($55,000) dollars par of said stock of the Charleston Light & Water Company is fifty-five thousand ($55,000) dollars. And said defendant has furthermore informed these plaintiffs that it repudiated any obligation to these plaintiffs, and announces its intention not to recognize in any way any liability under said contract."

The prayer for judgment is $65,000, with interest from the —————— day of June, 1902, the date on which defendant paid for the securities of the said Charleston Waterworks.

It was stated at the bar, and the fact seems admitted, that at the time of the service of the original summons and complaint the stock provided for in the contract, made part of the complaint, had not been issued, nor had the corporation then been created.

If, then, we treat the original complaint as an action for a breach of the contract in not paying the $10,000, the amended complaint

sets up another breach of the contract, in not furnishing the $55,000 of stock, a breach occurring after action brought. There is no question that, both under the statutes of the United States and under the practice in South Carolina, there exists the right of liberal amendment. But "amendments to a pleading can only state facts in existence at the time when the original pleading was made. A plaintiff cannot, therefore, introduce by an amendment to his complaint facts occurring subsequent to the commencement of the action." 2 Wait, Prac. 504, cited and approved in McCaslan v. Latimer, 17 S. C. 128. And the conclusion is sustained by the provisions of the Code of Procedure of South Carolina. Sections 190–197, inclusive, provide for amendments of pleadings in the most liberal way. Then comes section 198, as follows:

"The plaintiff and defendant respectively, may be allowed on motion to make a supplemental complaint, answer or reply, alleging facts material to the case occurring after the former complaint, answer or reply, or of which the party was ignorant when his former pleading was made."

If, therefore, we treat this amendment simply as introducing another breach of the contract, and seeking relief also for that, it could not be permitted, as this fact occurred after suit brought. But it is contended that the tenth paragraph of the proposed amendment gives an entirely different aspect to the amendment. It alleges that the defendant has repudiated any obligation to the plaintiffs, and has announced its intention not to recognize in any way any liability under said contract and has so informed plaintiffs. For the purposes of this motion, the allegations of the proposed amendment alone are examined, not as if they were true, but as if, supposing them capable of proof, they would sustain an action.

The contract which has given rise to this suit is an executory contract. It provides for the payment in cash of $10,000, and for the delivery at some time in the future of certain shares of stock in a corporation, not yet formed. The learned counsel for the plaintiffs insists that this case comes within the law with regard to executory contracts, the performance of which is to be at separate times, in the nature of installments. That is to say, when one party renounces it without cause before the time of performing it has elapsed he authorizes the other party to treat it as terminated, without prejudice to his action for damages,—and, if the latter elects to treat the contract as terminated, his right of action accrues at once. Marks v. Van Ecghen (2d Circuit) 30 C. C. A. 208, 85 Fed. 853. The rule thus laid down in this case was subsequently established by the supreme court in Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953. There the matter is elaborately discussed, and all the cases in England and in this country are quoted and reviewed. The leading case is Hochster v. De La Tour, 2 El. & Bl. 678. All the cases, however, in which this doctrine is followed or approved, are cases of interdependent obligations. One party agrees that he will render some work or labor in the leading case, serve as courier on certain terms for three months, or agrees to marry at a certain time (Frost v. Knight, L. R. 7 Exch. 111), or to receive certain goods on his ship (Harbour Co. v. Xenos, 11 C. B. [N. S.] 152), and the other

party thereupon agrees to do something. In other words, these are mutual obligations. This idea is further expressed in Roehm v. Horst, supra, replying to the idea that if this rule were adopted it would apply to cases of commercial paper, the chief justice says:

"But we are unable to assent to that view. In the case of an ordinary money contract, such as a promissory note or a bond, the consideration has passed. There are no mutual obligations. Cases of this sort do not fall within the reason of the rule."

In the same case, an opinion of Mr. Justice Peckham (Nichols v. Steel Co., 137 N. Y. 471, 33 N. E. 561) is quoted with approval, as expressing this distinction:

"It is not intended that in the bald case of a party bound to pay a promissory note, which rests in the hand of the payee, but which is not yet due, such note can be made due by any notice of the maker that he does not intend to pay it when it matures. We decide simply the case where there are material provisions and obligations interdependent. In such a case, and where one party is bound from time to time as expressed to deliver part of an aggregate and specified amount of property to another, who is to pay for each parcel delivered at a certain time and in a certain way, a refusal to be further bound by the terms of the contract or to accept further deliveries, and a refusal to give the notes already demandable for a portion of the property that has been delivered, and a refusal to give any more notes at any time which are evidently to be paid under the contract, all this constitutes a breach of the contract as a whole, and gives a present right of action against the party so refusing to recover damages, which the other may sustain by reason of such refusal."

The comment of the supreme court on this is:

"We think it obvious that, both as to renunciation after commencement of performance and renunciation before the time for performance has arrived, money contracts, pure and simple, stand on a different footing from executory contracts for the purchase and sale of goods."

The following is the contract in this case:

"Baltimore, Md., Sept. 26, 1901.

"Charles R. Spence, Esqr., 2nd V. P. Mercantile Trust & Deposit Company, Baltimore, Md.—Dear Sir: We have your favor of this date in regard to the Charleston Waterworks Company matter, but same makes reference to and is based upon an option held by you upon the securities of that company, of which we have no official knowledge. As we understand your letter, in the event of the purchase or reorganization by you of the present Charleston Waterworks Company as a result of the recent and pending investigations by you, and of the negotiations which have been had between us during the past summer, you are to pay us ten thousand dollars ($10,000) in cash, five per cent. (5%) of the capital stock of the proposed new company or of the present company reorganized, and an additional five thousand dollars ($5,000), par value, of said stock. The cash is to be paid us at the time you pay for the securities or property of the present Charleston Waterworks Company, and the stock certificates to be delivered to us as soon as issued. With this understanding we accept your proposition, and will thank you to return the inclosed duplicate hereof after having marked same correct.

"Yours very truly,                            Claudian B. Northrop.
                                                      "R. P. Tucker.

"Correct; with the understanding that the within mentioned payment is in full compensation for all services heretofore rendered and to be rendered by you. Further, with the distinct understanding that at this date we have no actual option on the Charleston Waterworks Co., but simply strong assurances that such option will be given by the first of October.

"C. R. Spence, 2nd V. P."

This is a contract by which, for services rendered and to be rendered, there will be paid $10,000 cash, and when the stock of a certain corporation is issued there will be delivered shares equal to 5 per cent. of the capital stock, and an additional stock of the par value of $5,000. It is an executory contract. "An executory contract is one where it is stipulated by an agreement of minds, upon a sufficient consideration, that something is to be done by one or both parties." Farrington v. Tennessee, 95 U. S. 683, 24 L. Ed. 558. It also comes within the reason of the rule.

This being the case, the amendment may be allowed. It is germane to the original, it grows out of the same contract, is for breach of the contract, sues for damages for the breach, and only enlarges the scope of the complaint. Having been notified, as it alleges, that the defendant does not consider itself bound by the contract, the plaintiffs could exercise the option either to wait until there was failure to deliver the stock, or to abandon the contract and sue at once for the recovery as damages the profits they would have received through full performance. Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; Pierce v. Railroad Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591. And this right of action began before suit was brought. Prima facie the amended complaint set up a cause of action. The original complaint demanded $10,000 as damages. The amended complaint asks for $65,000. This can be allowed. Whalen v. Gordon, 37 C. C. A. 70, 95 Fed. 305.

In Chamberlain v. Mensing (C. C.) 51 Fed. 512, on a similar motion this court said:

"With regard to the proposed amendment in the prayer, it will be noted that the complaint itself contains no allegation of damages. It charges a violation of the right of plaintiff. The damages are the necessary result of such violation. So they are properly in the prayer for relief, which is no part of the complaint. Levi v. Legg, 23 S. C. 283. The damages are not the cause of action. The cause of action is the wrong done to the plaintiffs. The right to recover damages grows out of this wrong done, because of the wrong. The amount so recoverable depends upon the nature, character, extent, and motive of the wrongdoing. Damages being thus an incident of, necessarily flowing from, and recoverable because of, the wrong if the amendment be allowed, stating the character of the wrong, heightening and coloring it, increasing it in degree, so, also, the amendment should be allowed in the prayer for relief, increasing the amount of damages."

The motion to amend is granted.