LLOYD ADRIATICO SOCIETA DI NAVIGAZIONE v. CONSOLIDATION COAL CO., Inc.

THE ADAMELLO.

Circuit Court of Appeals, Fourth Circuit.
January 10, 1928.

No. 2660.

1. Shipping ☞52—Charterer, on ship's master's announcing contract was void, was entitled to much latitude looking to preservation of rights under contract.

Where ship's master informed charterer that contract was null and void because of delay, charterer was entitled to much latitude looking to preservation of its right under contract, including right to prevent removal of res beyond jurisdiction if court, and fact that at the same time as filing libel it tendered cargo for shipment under contract is not necessarily inconsistent therewith, but merely a precautionary step looking to protection of its rights.

2. Shipping ☞38—Charter held not canceled for delay in loading cargo under circumstances.

Where a large part of coal had been received at pier for loading on ship in accordance with charter, and remainder was en route from mines, and was placed on shipboard within two days after expiration of time allowed for shipping, charter was not canceled because of delay in loading.

**3. Admiralty ☞33—Premature filing of libel affects only question of costs, when suit was conducted and prosecuted by agreement of parties.**

Where suit involving validity of charter because of charterer's delay in loading was conducted and prosecuted by agreement of parties, the fact that original libel was filed prematurely operated only to affect question of costs.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Admiralty; D. Lawrence Groner, Judge.

Libel by the Consolidation Coal Company, Incorporated, against the Lloyd Adriatico Societa di Navigazione, as owner of the Steamship Adamello, and in rem against the Adamello. Decree for libelant (19 F.[2d] 388), and respondent appeals. Affirmed.

H. H. Little, of Norfolk, Va., and George S. Brengle, of New York City (Hughes, Little & Seawell, of Norfolk, Va., and Bigham, Englar & Jones and D. Roger Englar, all of New York City, on the brief), for appellant.

Edward R. Baird, Jr., of Norfolk, Va. (Duncan & Mount, of New York City, Baird, White & Lanning, of Norfolk, Va., Russell T. Mount, of New York City, and George M. Lanning, of Norfolk, Va., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. The appellee was libelant in the District Court, and the appellant, claimant of the steamship Adamello, was respondent, and for convenience will be referred to herein as libelant and respondent, respectively. The libel was filed by the Consolidation Coal Company, a corporation of the state of Maryland, engaged in the export of coal, against the Lloyd Adriatico Societa di Navigazione, a shipowner and operator doing business under the laws of the kingdom of Italy, in personam as owner of the ship Adamello, and in rem against the ship with foreign attachment.

On the 29th of July, 1926, at Venice, Italy, a written charter party, or contract, was entered into between libelant and respondent, whereby the latter chartered to the former the steamship Adamello, or a sister ship, for a voyage from Philadelphia, Norfolk, or Newport News to one safe port on the west coast of Italy. The charter party provided that the chartered steamer was to carry a cargo of coal of not more than 8,400 tons and not less than 7,600 tons, of 2,240 pounds each. Loading was to be at the rate of 1,500 tons per running day, Sundays and holidays excepted, and commencing 72 hours after the steamer was tendered, and written notice was given of its readiness to load. Freight was to be paid at the rate of $3.85 per ton.

The Italian steamship Adamello was tendered at Norfolk, Va., at noon on September 14, 1926, ready for loading. On the 20th of September, 1926, the master of the Adamello addressed a communication to libelant, reciting the tendering of his vessel on the 14th of September, and concluding as follows: "As loading has not yet begun, please note that under the terms of clause No. 3 of the charter party, dated at Genoa, July 29, 1926, said charter is null and void."

The respondent's master's position apparently was that the charter was null and void, because the steamer had been waiting six days and no cargo had been loaded. The libelant insisted that there was no forfeiture of the charter as claimed, and that there had been no "stoppage or stoppages" (caused by embargo or delay) "continuing for a period of six running days," and that, on the contrary, 2,803 tons of the ship's cargo were shipped from the mines on September 12th, and received at the pier on September 13th, and the remainder was shipped on or before September 17th, and arrived from day to day, concluding September 26th. On September 21, 1926, the libel in this case was filed, charging annulment and abandonment of the contract by the respondent. Three-quarters of an hour after the filing of the libel, to wit, at 4:40 p. m., on the 21st of September, 1926, the ship's master addressed and delivered by hand at Norfolk, Va., to the libelant, a further communication, as follows:

"As I advised you yesterday, this charter appears to be null and void, under the terms of clause No. 3 thereof. I am accordingly cabling my owners, advising that no coal has been tendered to-day, and asking them for instructions. I will advise you tomorrow what action they instruct me to take."

On September 22d, at 4 p. m., a communication was addressed by the libelant company to the representative of the respondent company, reviewing the contract, and correspondence in connection therewith, in which libelant offered to load the cargo promptly, and informed respondent that it would insist upon transportation of the cargo. Libelant further advised that, upon the withdrawal of the cancellation notice and the acceptance of the cargo, the libel filed would be dismissed, and that the failure to accept

the offer should be considered without prejudice to the maker. To this communication respondent made answer on September 23d, to the effect that, although libelant had refused to submit the matter in controversy to arbitration, and indicated a preference to have the suit go on, respondent would be willing, without prejudice, and solely with a view to reducing the damages in event it should be decided that the charter was still in force, to offer the ship for immediate loading on the same terms as set forth in the original charter, except that freight should be at the current rate of about $7 per ton, and that, in the event of proceeding on this line, the new charter would be entirely without prejudice to appellant's rights in the pending suit.

On September 24th, the libelant replied that, with a view to minimizing delay and damages, it would accept respondent's offer respecting the new contract on the same terms as that of the 29th of July, 1926, save that the freight rate should be placed at $7 per ton, instead of $3.85 per ton, and that the making of such new charter should be entirely without prejudice to the rights and contentions of both parties in the pending suit, and that in order that the letter might stand as the new charter, and that there might be no misunderstanding as to the agreement between the parties, the respondent should sign the carbon of the letter, which was done. Loading was thereafter promptly proceeded with, the cargo being taken aboard by agreement at Sewell's Point instead of Newport News. The ship docked at 6:15 p. m. on September 25, 1926. Loading was concluded at 2 p. m. on September 27th, and the ship cleared for Porto Vecchio di Piombino, Italy, on September 28th. The full cargo of 7,954 tons of coal, as shown by bill of lading, was shipped, for which the libelant paid at the rate of $7 per ton, in accordance with the agreement of September 24, 1926.

On the 4th of November, 1926, respondent duly filed its answer to the libel, and also filed therewith certain interrogatories to the libelant, which were answered on the 11th of March, 1927. The case was tried on stipulation in writing as to the facts, and as to which, in behalf of libelant, sundry letters and exhibits were filed, some tending to prove that there had been no strike or other embargo causing delay in loading the cargo. Respondent introduced no testimony upon this question, relying upon the alleged premature bringing of the suit, irrespective of the provisions of the charter.

On the 22d of March, 1927, the District Court rendered its decision in the cause, and, among other things, decided that there had been no embargo or strike in the transportation of coal, and that accordingly the charter had not become automatically void, and that the letter of the ship's master of the 20th of September, 1926, was not an absolute refusal to perform the contract, but rather the expression of an opinion that under the terms of the charter the failure to load the ship within a six-day period had worked its cancellation, and that at most it was but a threat by the ship's master not to be bound by the contract, and was not unequivocal in character, or accompanied by any act or conduct on his part showing a purpose to evade or avoid the contract, and hence the suit was improvidently instituted, justifying its dismissal, save for what occurred between the parties in connection with the modification of the terms of the charter party immediately following the writing of the letter of the 20th of September, and the filing of the libel the next day, all of which the stipulators duly submitted to the court. The trial judge, in view of these conditions, after reviewing fully the several acts of the parties, announced his conclusions as follows (19 F.[2d] 391):

"* * * That libelant, in bringing his suit, rested his case upon the proposition that the contract had been wrongfully breached by respondent, and thereafter made a new contract, agreeing to pay the additional freight money, unless he should be able to prevail in the litigation which he had provoked. In other words, that if the court should be of opinion that the first letter of respondent's master was not in contemplation of law a breach of the contract, libelant, by agreeing to be bound by the result of his suit is wholly without remedy to collect back the difference between the original freight rate and that actually paid.

"In my opinion this position is unsound because in the letter of September 25 to the master of the ship under which the cargo was loaded and transported all rights under the original charter party were specifically reserved, and while this is perhaps not shown to the same extent in the letter of the previous day, I think it is perfectly clear that the parties themselves contemplated just this and nothing more. But, beyond all of this, it would, I think, be inequitable in the highest degree to say in one breath that neither party had done any act to justify the cancellation of the contract, and in the next that through a misunderstanding

that result was accomplished. Everything that the parties originally intended has occurred just as it was contemplated it should, except that there was a few days' delay in the arrival of the cargo at the loading port. The ship arrived on time, and, except for this slight delay, loaded promptly and transported the identical cargo for which she was employed, and delivered the same in accordance with the terms of the original contract. The master, out of an abundance of precaution, advised the shipper of his interpretation of the contract, which, as it turns out, was incorrect. The shipper, mistakenly construing this as a refusal to load, brought suit prematurely, and then the parties, in order to save damage and loss, agreed that the original contract might be, and it was, carried out according to its terms in all save the amount to be charged for the service, and this they agree, as I construe their purpose, to leave for determination to a court of competent jurisdiction. Hence it would seem to be now proper to put the parties in statu quo, and to this end each may be permitted to amend the pleadings, and if and when this is done, a decree should follow finding:

"That the respondent recover his costs, including the cost of his bond for releasing the vessel from arrest. That the libelant have a decree against the respondent for the amount of the additional freight paid over and above the rate stipulated in the original charter party, less demurrage accruing between noon of the 17th and the stipulated time for loading and the actual time in which the ship was loaded. In reaching the last conclusion, I ought to say that in my opinion this delay was primarily attributable to the improvident action of libelant, as well as the delay in the arrival of the cargo, and the loss should fall on it."

On April 28, 1927, libelant filed its amended libel, and on that date the respondent filed its exceptions and answer to the amended libel. The exceptions were overruled, and thereupon the court entered its final decree, appealed from herein, against the respondent and the surety on the bond given for the ship's release, as follows:

"On consideration whereof, the court being of opinion that there was no breach of the charter of July 29, 1926, and that the correspondence between the parties did not constitute a new and different contract, but was a modification thereof contingent upon the court's determination of the questions whether or not the grounds stated by the master in his notice to libelant were in law sufficient to justify a cancellation, and the

court being of opinion that they were not, and that libelant was entitled to have its coal transported at the rate of freight provided in said charter, doth so decree, and doth adjudge, order, and decree that the libelant do recover of Lloyd Adriatico Societa di Navigazione the sum of $25,055.10, being the difference between the amount of freight earned on the cargo loaded on the Adamello at the rate stipulated in the charter of July 29th, to wit, $3.85 per ton, and the amount paid under the subsequent agreement of September 23 and 24, 1926, to wit, $7 per ton, subject, however, to a credit of $1,206.63, damage due to the Adamello by reason of the delay in loading accruing between the expiration of the time allowed for loading in said charter, to wit, 9:16 a. m. September 24th, and the time when the loading was completed, to wit, 2 p. m. September 27th, at the rate specified in the charter.

"And it appearing to the court that the steamship Adamello has been released from arrest by the execution of a bond by Fr. Raggio, master, as principal, and National Surety Company, as surety, in the penalty of $30,000 conditioned according to law, it is adjudged, ordered, and decreed that the libelant do recover of said stipulators the penalty of said bond, to be satisfied, however, by the payment to it of said sum of $25,055.10, with interest from September 27, 1926, until paid, less said sum of $1,206.63, with interest thereon from the same last-mentioned date, and that the claimant do recover its costs in this behalf expended."

The assignments of error are many in number, but in substance raise but four questions: First, that, the court having, as claimed, held that there had been no anticipatory breach of the charter by the respondent, no cause of action existed when the libel was filed and the ship attached, and hence the libel should have been dismissed; second, that, there being no cause of action existing when the suit was instituted, a dismissal should have been had, and the subsequent proceedings not taken by amendment, as was done; third, that the respondent neither expressly nor impliedly consented to the court's deciding any issue other than those framed by the original pleadings; and, fourth, that the right of action, if any, existing by reason of the matters sought to be set up by the amended proceedings, was not properly a subject of the admiralty jurisdiction.

This case in many respects is an unusual one, and we have given much thought and consideration thereto, and reached the con-

clusion that, taking it in its various aspects, the result reached by the lower court was as fair to the appellant as could have been anticipated or reasonably asked. The assignments of error present almost entirely mere technical questions, ignoring absolutely the merits of the case. The first contention is that the original libel should have been dismissed because prematurely brought, and liability on the part of the respondent thereby escaped, and that, if not, it should in any event be avoided, because the matters and things set forth in the amended libel, though based upon the contracts and agreements entered into by respondent arising from its effort to escape liability on its original contract, occurred at a date subsequent to the actual filing of the libel, and that the court should hence surrender its jurisdiction as a maritime tribunal in the ascertainment and enforcement of the rights and liabilities of the parties litigant, notwithstanding the question presented by the original libel, and that the answers and the amended libel and answers were strictly maritime in character, in that they related to freight rates, under contracts of affreightment between ships and shippers, and commerce upon the seas.

[1] None of the positions thus covered by the assignments of error are in our judgment well taken. On the contrary, the rulings of the trial court should be determined in the light of the original contract, and the amendatory agreements arising from the correspondence had in connection therewith, brought about by the threatened annulment by the respondent of the charter party, and the alleged premature suit arising therefrom, and are plainly right. A different course would have brought about a highly inequitable result, and one that could not have been in the minds of either of the parties to the correspondence and the undertakings between them. Indeed, we are not strongly impressed with the view that the libelant could not have been afforded full relief in the original libel filed by it. Certainly, the ship's master having announced that the contract was null and void, the libelant was entitled to much latitude looking to the preservation of its rights thereunder, including the right to prevent the removal of the res beyond the jurisdiction of the court, and the fact that at the same time the libelant tendered the cargo for shipment under the contract was not necessarily inconsistent therewith, but a precautionary step looking to the protection of its rights. The cases, we think, sustain this view, and nowhere is this doctrine more aptly stated than by Lord Campbell,

C. J., in Hochster v. De La Tour, a leading English case, as follows:

"It seems strange that the defendant, after renouncing the contract and absolutely declaring that he will never act under it, should be permitted to object that faith is given to his assertion, and that an opportunity is not left to him of changing his mind. * * * The man who wrongfully renounces a contract into which he has deliberately entered cannot justly complain, if he is immediately sued for a compensation in damages by the man whom he has injured; and it seems reasonable to allow an option to the injured party either to sue immediately or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer." Hochster v. De La Tour (1853) 2 L. & Black, 678, 22 L. J. Q. B. 455, 17 Jur. 972, 6 Eng. Rul. Cases 576.

The American authorities fully sustain this view. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 589, 36 S. Ct. 412, 60 L. Ed. 811; Roehm v. Horst, 178 U. S. 1, 18, 19, 20 S. Ct. 780, 44 L. Ed. 953; Northrop v. Mercantile Trust & Deposit Co. (C. C.) 119 F. 969, 973 (a decision of Judge Simonton, of this circuit), and cases cited; Golden Cycle Mining Co. v. Rapson Coal Mining Co. (C. C. A. 8th) 188 F. 179, 182; O'Neill v. Supreme Council, 70 N. J. Law, 410, 412, 57 A. 463, 1 Ann. Cas. 422; Roach v. Harty Coal Co. (1917) 79 W. Va. 793, 92 S. E. 458; Indiana Life Endowment Co. v. Reed (1913) 54 Ind. App. 450, 103 N. E. 77, 80.

[2] Certainly respondent's position was not a strong one, in that it sought on the one hand to obtain the benefit of the annulment of the contract, and at the same time denied to the appellant the privilege of asserting its rights arising incident to such claim. This is particularly true under the facts and circumstances of this case, where we can see no just cause for the respondent's action, other than an apparent desire to escape liability under the plain terms of the written contract. However great this temptation may have been, justice requires that it should not prevail. The original charter party entered into on the 29th of July, 1926, at Venice, Italy, provided for a shipment of the coal in question from Newport News or Norfolk to the western coast of Italy at a fixed rate, to wit, $3.85 per ton, and at the time of the arrival of the ship to take on the cargo, to wit, September 14, 1926, the freight

rate had risen to $7 per ton. Thereupon respondent attempted to avoid responsibility for the contract it had already made by declaring the same null and void, and a new agreement was entered into by the parties, providing for the transportation of the same cargo at an advanced rate, without prejudice to the rights of the parties in the pending libel. The libelant was thus forced to pay practically double the rate it was entitled to—that is, $7 instead of $3.85 per ton—and the very cargo of coal was transported at the advanced rate. The claim of cancellation was wholly without merit, and at best involved only a question of demurrage. At the time the claim of annulment was made, a large part of the coal, approximately a third of it, had been received at the pier for loading on the ship, and the remainder thereof was en route from the mines, and was placed on shipboard within two days of the expiration of the time allowed for shipping. The respondent's claim of cancellation because of alleged delay in loading the cargo clearly should not prevail.

[3] Assuming the original libel in this cause to have been filed prematurely, which we do not concede, the same should have operated only to affect the question of costs, certainly when suit was conducted and prosecuted by agreement of the parties, as was done in this case. Henderson v. 300 Tons of Iron Ore (D. C.) 38 F. 36, 39; The Pioneer (D. C.) 53 F. 279; The Lassell (D. C.) 193 F. 539; Seaboard A. L. R. Co. v. Renn, 241 U. S. 290, 293, 36 S. Ct. 567, 60 L. Ed. 1006; Benedict on Admiralty (5th Ed.) § 355.

We find no reason for changing or modifying the views herein expressed, because of anything contained in the brief filed on behalf of the National Surety Company as amicus curiæ. Our conclusion upon the whole case is that the decree of the lower court should be affirmed, the same being at least as favorable to the appellant as could be asked, and that appellant should pay the costs in this court.

Affirmed.