## ROY ANNETT, INC., v. KILLIN.

1. BROKERS—LISTING AGREEMENT—COMMISSION.

Real-estate broker's listing agreement which gave the broker the exclusive right to sell during a specified period and the right to a commission "if said property is sold by the owner within 6 months thereafter to any person with whom said broker negotiated with respect to a sale during the term thereof" was designed to protect the real-estate salesman from subterfuge and fraud on the part of the seller.

2. SAME—LISTING AGREEMENT—SALE AFTER TERM OF EXCLUSIVE LISTING.

A sale of property through a successor broker after term of plaintiff broker's exclusive listing had expired was properly found not to have been a sale *by the owner* as the term was used in listing agreement with plaintiff whereby the owner would have been liable to pay plaintiff commission for sale "by the owner within 6 months thereafter to any person with whom said broker negotiated with respect to a sale during the term thereof".

3. EVIDENCE—AMBIGUITY—PAROL EVIDENCE.

In the event of ambiguity in an instrument, the Supreme Court makes use of all possible aids in construction, the parol evidence rule to the contrary notwithstanding.

4. BROKERS—LISTING AGREEMENT—AMBIGUITY—PAROL EVIDENCE.

Testimony of defendant owner of property which had been sold through a successor real-estate broker was properly admitted

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]  8 Am Jur, Brokers § 170.

Broker's right to commission as affected by failure to consummate sale within time limited by terms of contract.  26 ALR 784.

Broker's right to commission on sales consummated after termination of employment.  27 ALR2d 1348.

[3, 4]  8 Am Jur, Brokers § 224.

Applicability of parol evidence rule to written listing agreements of real-estate broker.  38 ALR2d 542.

to aid in ascertaining meaning of ambiguous phrase in listing agreement under which plaintiff sued for commission, where for 6 months after expiration of period of plaintiff's exclusive listing, plaintiff would be entitled to a commission for a sale "by the owner" if the sale were to a party with whom the broker had negotiated, so as to disclose the owner's understanding from the broker as to what "by the owner" meant.

Appeal from Clinton; Davis (Morris K.), J., presiding. Submitted October 3, 1961. (Docket No. 8, Calendar No. 48,706.) Decided December 28, 1961.

Action by Roy Annett, Inc., a Michigan corporation, against Jack Killin and Olive G. Killin for real-estate dealer's commission. Judgment for defendant. Plaintiff appeals. Affirmed.

*James S. Miner,* for plaintiff.

*Timothy M. Green,* for defendants.

EDWARDS, J. This is a suit by a real-estate broker for a commission for the sale of a farm, claimed to be due under the terms of a written real-estate listing agreement. The farm was sold after the agreement had expired but within 6 months thereafter. The circuit judge who heard the testimony without a jury arrived at a view of the facts and an interpretation of the agreement which occasioned his entry of a judgment of no cause for action, and plaintiff appeals.

Defendant appellees, Mr. and Mrs. Jack Killin, owned a farm which they wished to sell. In 1954 they had listed the farm for sale with the Whipp Agency, a real-estate agency. The farm was not sold and the listing agreement expired. On September 25, 1956, defendants entered into an exclusive listing agreement with plaintiff real-estate broker, Roy Annett, Inc. Under the agreement, plaintiff

had the exclusive right to sell the farm in the period September 25, 1956, to May 31, 1957. The commission called for was 10%. The farm was not sold during that period and the exclusive listing agreement expired by its own terms.

One paragraph, however, of the listing agreement also provided:

"(2) To pay said broker 10% commission on the price for which sold (a) if said broker finds a buyer during said period, ready, willing and able to consummate a sale on the above named terms, or (b) if said property is sold during said term, or (c) if said property is sold by the owner within 6 months thereafter to any person with whom said broker negotiated with respect to a sale during the term thereof."

After expiration of the listing agreement, on July 11, 1957, defendants gave another exclusive listing agreement to a real-estate agent named Marshall. This agreement provided for a 5% commission. Thereafter, on August 19, 1957, the subject farm was sold to one Jack Schonfeld. The purchase agreement was prepared and the deal was closed by Marshall, and he received the 5% commission called for by his agreement.

Much of this record consists of testimony concerning contacts between the ultimate purchaser, Mr. Schonfeld, and the 3 real-estate agents referred to above. There is no doubt that in each instance defendants furnished Schonfeld's name as a likely prospect, and that each agent made some sales efforts. Plaintiff appellant insists that his contacts during the term of his listing agreement were so extensive that he had "negotiated" with Schonfeld within the meaning of paragraph 2(c) of the listing agreement. This, defendants deny and in turn emphasize the sale by Marshall, whose efforts plaintiff in turn seeks to decry.

The record would support a finding that each real-estate agent in turn sought to sell the farm to Schonfeld, and that the first 2 failed and the last succeeded. These negotiations started with an asking price of $80,000, and ended with a closing price of $47,000. The circuit judge, however, did not decide the case on this basis. He decided that paragraph 2(c), when it referred to a sale "by the owner" within the 6-month period, was ambiguous. He allowed in the record the following testimony pertaining to this clause from Jack Killin:

"*Q.* Now what in particular did you ask Mr. Knechtel concerning that listing agreement?

"*A.* I asked Mr. Knechtel in relation to the second clause of this list.

"*Q.* Now let's refer to it as a listing agreement, not a list.

"*A.* Listing agreement. I am sorry. That said if sold by the owner; and I asked him if it made any difference if that was sold by a broker, or if that meant the owner alone.

"*Q.* And in response to that question what did Mr. Knechtel tell you?

"*A.* Mr. Knechtel told me that that meant exactly what it said, 'sold by the owner,' and it had nothing to do with the broker."

Accepting this testimony, the circuit judge reasoned that the words "by the owner" should not be construed to cover a sale made through another real-estate agent. His opinion said:

"To resolve the issue in this case the court, guided by the various rules of construction, must resolve this ambiguity. If the intention of the parties can be ascertained from an examination of the whole instrument, such intention should be given effect. It will be noted that 2(b) of this listing provides that the owners shall pay a commission if the property is sold during the life of the listing (September 25,

1956 to May 31, 1957), during which the broker presumably, was working to effectuate a sale. It is reasonable to assume that his protection during this period should be greater and more complete, than during a period following the expiration of his listing. 2(b) therefore, provides protection, if the property is sold. Had it been the intent of the party drafting the listing, that the broker was intended to have the absolute protection as given in paragraph 2(b), it would have been most simple, to have added 'and 6 months thereafter.' Instead of such quoted words, clause 2(c) is added. Since it covers a period after the exclusive listing had expired, it would appear that the obligation of the owner should be lessened. One of the cardinal rules of construction is that each word, clause and paragraph of a contract must be given meaning and effect, if possible. Under this rule the words 'by the owner' cannot be ignored. If such words are ignored 2(c) would be susceptible to the construction for which plaintiff contends, in this case. If meaning is attached to the words 'by the owner' it can mean, only a sale directly by the owner, rather than through a broker. It appears obvious to me that this clause is aimed at the possibility of the owner getting together with a prospect furnished by the broker, and thereby save the payment of a commission. While in this case the commission paid to the Marshall Agency was 5% and the commission called for in the listing agreement between plaintiff and the owners called for 10%, the broker did not furnish the prospect and the testimony throughout the case, including the exhibits, clearly indicate that the owners would have gladly paid the broker his commission had the efforts of the agent produced a sale. The owners were anxious to sell as indicated in the P.S. in plaintiff's exhibit 8: 'Let's put a clearance sale price on the farm, enough to move it.'

"To give the words 'by the owner' meaning, they must be interpreted as contended by the defendants.

"The rule on which the foregoing is based is well expressed as follows:

" 'Such an interpretation must be adopted as will render the whole agreement operative, if it can consistently and reasonably be done. So far as possible, effect will be given to all the language and to every clause of the agreement. No word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.' 12 Am Jur, Contracts, § 241, pp 774, 775.

"If the ambiguity of 'by the owner' were not fully resolved under the foregoing rule, such ambiguity would have to be resolved against the plaintiff and in favor of the defendant, under the rule which follows:

" 'A contract *must* be construed *most* strongly against the party preparing it.' (Emphasis supplied.) *Amick* v. *Hickey,* 254 Mich 37; *Olsen* v. *Fry,* 234 Mich 233."

As we read this agreement, it is, as the circuit judge suggests, designed to protect the real-estate salesman's commission from subterfuge and fraud on the part of the seller. This record does not smack of subterfuge. The deal was not handed cut and dried to the Marshall Agency. An offer to buy made by Schonfeld to Marshall on August 19, 1957, was rejected by defendants. It was a second offer signed that same date which resulted in closing of the deal.

We agree with the circuit judge in holding that the farm was sold by another real-estate agent and not "by the owner" within the meaning of the listing agreement. While we believe this conclusion could be reached on the face of the agreement itself, this interpretation would not be without some doubt.

In this situation, testimony as to prior negotiations becomes admissible.

In *In re Traub Estate,* 354 Mich 263, this Court used language directly applicable to our present case (p 280):

"But we are not without enlightenment in addition to the agreement itself. By way of preface we should say that in event of ambiguity in an instrument we make use of all possible aids in construction, the parol evidence rule to the contrary notwithstanding. 3 Corbin, Contracts, § 579, p 250,* states the principle with clarity:

" 'As long as the court is aware that there may be doubt and ambiguity and uncertainty in the meaning and application of agreed language, it will welcome testimony as to antecedent agreements, communications, and other factors that may help to decide the issue.'

"In the contract before us we must conclude from the positions taken by the litigants that a real, and not a strained or fanciful, ambiguity existed."

We agree with the circuit judge's admission of the testimony of Jack Killin, and with his interpretation of the crucial clause of the listing agreement.

Affirmed. Costs to appellees.

Dethmers, C. J., and Carr, Black, Kavanagh, and Souris, JJ., concurred.

Kelly, J., did not sit.

Otis M. Smith, J., took no part in the decision of this case.

---

* Pages 420, 421 in revised (1960) volume.—Reporter.