HOFFMAN *v.* BURKHAMMER.

1. EQUITY—JURISDICTION—FRAUD.
   Equitable jurisdiction to set aside an instrument on the ground of fraud must be based on more than an epithet or a label.

2. SAME—JURISDICTION—SETTING ASIDE COMPROMISE AGREEMENT— ATTORNEY FEES—IMPRESSMENT OF TRUST.
   Claim of a 1/3 interest in defendant's remainder interest in $20,000 trust fund which had been established for defendant's

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur, Equity § 38.
[2, 3] 19 Am Jur, Equity § 10 *et seq.*
[4] 1 Am Jur 2d, Accord and Satisfaction §§ 47–51.
[5] 41 Am Jur, Pleading § 332.
[6] 11 Am Jur, Compromise and Settlement §§ 29–34.
[7] 11 Am Jur, Compromise and Settlement § 34.
[8] 11 Am Jur, Compromise and Settlement § 36.
[9] 7 Am Jur 2d, Attorneys at Law § 203 *et seq.*
[10] 7 Am Jur 2d, Attorneys at Law § 208 *et seq.*
[11] 7 Am Jur 2d, Attorneys at Law §§ 214–218.

2 minor children, made in bill to set aside compromise agreement respecting plaintiffs' attorney fees relative to will contest of defendant's father's estate which had resulted in setting aside will virtually disinheriting defendant *held*, to have established equitable jurisdiction, since only a court of equity has the power to impress a trust in plaintiffs' favor upon defendant's remainder interest.

3. SAME—IMPRESSMENT OF TRUST—JURISDICTION—VALUE.

The exercise of the power of a court of equity to impress a trust is a sufficient justification of retention of jurisdiction in equity, where the determination of dollar value of the interest claimed may not otherwise presently be made with certainty, the remedy at law being inadequate.

4. ACCORD AND SATISFACTION—PERFORMANCE.

The full performance of an accord would prevent recovery under the original agreement.

5. PLEADING—MOTION TO DISMISS.

Allegations of a bill of complaint are accepted as true in ruling upon a motion to dismiss.

6. COMPROMISE AND SETTLEMENT—PERFORMANCE—SETTING ASIDE AGREEMENT—PLEADING—STOCK SPLIT.

Defendant who inherited 185 shares of stock from her father's estate as a result of plaintiff attorneys' efforts and executed a compromise agreement to give them 61 shares as part of their third share of the estate, but delayed transfer of such shares until after then pending 2-for-1 stock split had taken place *held*, not to have fully performed the compromise agreement, hence, trial court did not err in setting aside the compromise agreement, where plaintiffs had also claimed under their original contract for services a share of defendant's remainder interest in a trust that could not be reached by any remedy at law.

7. SAME—PERFORMANCE—RESCISSION.

A creditor need not perform his promise to discharge the old debt but may rescind a compromise agreement and sue on the original obligation, when the debtor fails to perform his new promise, or is materially in default thereon.

8. SAME—PERFORMANCE—AMBIGUITIES—EVIDENCE.

Antecedent agreements, communications, and other factors that may help to decide the issue of whether or not a debtor has performed a compromise agreement may be resorted to only when alleged ambiguities cannot otherwise be resolved.

9. ATTORNEY AND CLIENT—SCRUTINY OF COURT—ATTORNEY FEES.
    Dealings between attorney and client should be closely scrutinized
    by the courts in resolving dispute as to attorney fees.

10. SAME—AGREEMENT TO REPRESENT IN WILL CONTEST.
    An agreement between attorneys and client expressing latter's
    desire to contest her father's will which had virtually disin-
    herited her and in which agreement plaintiff attorneys were
    employed to represent her "to contest said will and to represent
    her in connection with said estate" could properly indicate to
    a layman only that the representation by the attorneys would
    continue until the matter was finally settled.

11. SAME—CONTINGENT FEE CONTRACT—COMPROMISE AND SETTLE-
    MENT—RECORD.
    Record presented in suit to set aside compromise agreement as
    to fees between plaintiff attorneys and defendant client *held,*
    to show that trial court correctly computed amount due under
    original contingent fee contract for representing defendant
    in will contest and for services performed by them in the ad-
    ministration of the estate.

Appeal from Allegan; Fox (Raymond W.), J.,
presiding. Submitted February 5, 1964. (Calen-
dar No. 42, Docket No. 50,228.) Decided June 1,
1964.

Bill by Leo W. Hoffman and Frederick D. Mc-
Donald against Queen Burkhammer to set aside
compromise memorandum and receipt and to enforce
contingent attorney fee agreement in connection
with a will contest. Decree for plaintiffs. Defend-
ant appeals. Affirmed.

*Leo W. Hoffman, in propria persona,* for plain-
tiffs.

*Keith R. Wellington,* for defendant.

SOURIS, J. This case involves a dispute over at-
torney fees. Plaintiff attorneys were engaged by
defendant upon a contingent fee basis to contest the

probate of her father's will.[1] Plaintiffs were successful and on September 18, 1961, Judge Raymond Smith of the 20th circuit determined that defendant's father lacked testamentary capacity when he executed his will thereupon entitling defendant, as sole heir, to the entire estate.

Subsequent to Judge Smith's decision of September 18, 1961, there occurred several discussions between plaintiffs and defendant and her husband concerning the proper computation of plaintiffs' fee.[2] On April 12, 1962, the parties agreed in writing as follows:

"Leo W. Hoffman and Frederick D. McDonald do hereby acknowledge receipt of 253 shares of Kellogg common stock as part payment of their attorney

---

[1] "Whereas, Queen Burkhammer, hereafter called first party, is a daughter and heir-at-law of John E. Ward, deceased, who died on or about July 10, 1960, leaving a purported last will and testament wherein which he left $100 to first party and no other part of his estate to her, and

"Whereas, first party desires to contest the probate of said will and desires to retain and employ Leo W. Hoffman and Frederick D. McDonald, hereafter called second parties, as her attorneys to contest said will and to represent her in connection with said estate;

"It is agreed as follows:

"1. First party hereby retain second parties as her attorneys to represent her in connection with said estate and to contest said will, and second parties hereby agree to act as attorneys for first party.

"2. First party agrees to pay second party as attorney fees therefor 1/3 of the net amount of said estate over $100 recovered for first party by suit or contest of said will; provided, that said attorney fees shall be 1/4 of the net amount of the estate recovered for first party over $100, if said recovery is made by settlement. If nothing is recovered from said estate for first party, first party is not obligated to pay any attorney fees.

"3. It is further understood and agreed that second party will not negotiate any settlement without first securing the consent of first party."

[2] Defendant received from the estate assets valued in excess of $100,000, consisting primarily of securities and realty. The parties disagreed on a number of matters, e.g., whether plaintiffs' expenses were to be paid separately or were included in their fee; whether a $10,000 claim against the estate which defendant settled upon plaintiffs' advice and upon their assurance that they would subtract 1/2 of it from their fee should be included in the amount upon which plaintiffs' 1/3 contingent fee would be computed; whether certain sums paid plaintiffs prior to settlement of the estate were attorney fees or repayment of sums plaintiff Hoffman had loaned to defendant.

fee, and it is further understood and agreed by and between Leo W. Hoffman and Frederick D. McDonald and Queen Burkhammer that Queen Burkhammer is to assign to her attorneys, 61 shares of Consumers Power common stock at such time as said estate is closed and she receives such stock.

"It is understood and agreed that all attorney fees and costs chargeable to Queen Burkhammer arising out of her suit against the estate of John E. Ward to contest the will and for the administration of said estate are fully satisfied and paid upon delivery of the 61 shares of Consumers Power common stock."

On May 2, 1962, plaintiffs acknowledged receipt of 61 shares of Consumers Power Company common stock "as payment in full for all fees regarding the John E. Ward estate, deceased."

Plaintiffs filed a bill of complaint on June 29, 1962, and an amended bill on July 18, 1962. They alleged that the understanding of the parties at the time of the April 12th agreement was that plaintiffs were to receive 1/3 of the Consumers Power Company stock in the estate (*i.e.,* 1/3 of 185, or 61 shares);[3] that on April 13, 1962, a probate court order transferred the 185 shares to defendant; that defendant, knowing of an impending 2 for 1 stock split, waited until it had occurred, resulting in her 185 shares increasing to 370 shares "and then, intending to defraud plaintiffs, realizing they did not know about said stock split, did transfer 61 shares" to plaintiffs.

As relief plaintiffs asked that the April 12th agreement be declared void, and that the original

---

[3] It is of interest to note that defendant testified at trial:

"[On April 12th] I had 185 shares, and he got a third which was 61 shares. Now, we didn't go on value on that, we didn't say it is $85 today and 82 tomorrow. We had 185 shares and he got a third which was 61 on that day. We didn't go over any particular value on that. He just took a third of whatever the shares were. There was no cash value considered right then."

contingent fee agreement, as interpreted by the parties prior to April 12th, be enforced. Plaintiffs asked that defendant be ordered to assign to them 1/3 of her remainder interest in a trust which had been established for defendant's children with a part of the estate proceeds, an interest in which plaintiffs alleged they had been willing to forgo their share but only conditioned upon performance of the April 12th agreement.

Defendant interposed a motion to dismiss alleging that plaintiffs had not stated an equitable cause of action, that plaintiffs had an adequate remedy at law, and that defendant's right to jury trial would be lost unless the complaint were dismissed or transferred to the law side of the court. This motion was denied and the case proceeded to trial. The chancellor's decree of December 19, 1962, declared the April 12, 1962, agreement and the May 2, 1962, receipt void and held that by virtue of the contingent fee agreement plaintiffs were entitled to payment of $5,282.04 and an assignment of 1/3 of defendant's interest in the trust fund.

On appeal defendant first argues that the chancellor erred in not granting her motion to dismiss plaintiffs' complaint. Defendant relies solely upon *Christian* v. *Porter,* 340 Mich 300, and the cases cited therein. In *Christian* plaintiff special administrator of an estate sued in equity to recover the face value and interest on bonds, alleging that defendant had wrongfully procured and fraudulently converted the bonds which had belonged to the decedent's estate. This Court held that the chancellor erred in denying defendant's motion to transfer the cause to the law side of the court (pp 303, 304):

"The mere mention of fraud would not place the case in chancery. In *Austin* v. *Socony Vacuum Oil Co.,* 291 Mich 513, it is stated (p 519):

" 'The mere mention of the word fraud, without any supporting data, is insufficient to carry the case to chancery. Equitable jurisdiction does not rest on the persistence with which it is asserted, and although "fraud" is charged in several paragraphs of the bill, the basic essentials of such an action are not made out. So long as the distinction between law and equity remains in our jurisprudence, equitable jurisdiction must be based on more than an epithet or a label.' "

Defendant argues that plaintiffs' complaint was insufficient to allege fraud and that, therefore, upon the authority of *Christian* it should have been dismissed. In so arguing defendant assumes that absent properly alleged fraud no grounds for equitable jurisdiction exist. However, plaintiffs claimed an interest in defendant's remainder interest in a $20,000 trust fund, the beneficiaries of which were defendant's 2 minor children. The trust income was to be used or accumulated for the children's care, support, and maintenance. Upon each child's graduation from high school, her share of the trust principal and income was to be used for post-high school education and upon each child's reaching the age 24, her share of any principal and income remaining in the fund was to become the property of defendant.

In an action at law, the contingencies surrounding a determination of the value, if any, of defendant's interest in the trust, and, therefore, of plaintiffs' claimed 1/3 interest, are such as to make it impossible for plaintiffs to prove with any certainty the present dollar value of their interest to which they might be entitled by judgment at law. Thus, plaintiffs could obtain relief only in a court of equity which has the power to impress a trust in plaintiffs' favor upon defendant's remainder interest in the trust fund.

In *Wild* v. *Wild,* 360 Mich 270, plaintiff sued in equity alleging, *inter alia,* defendant's breach of contract to support plaintiff in return for plaintiff's conveyance to defendant of certain property. Defendant claimed error in the trial court's refusal to transfer the action to the law side:

"The nature of the undertaking on which plaintiff's suit was in part based must be given consideration. The agreement was one that by its terms continued until the time of plaintiff's death. The consideration therefor was basically the transfer of the property of plaintiff and his wife to the defendant. There was, in other words, complete performance on their part.

"An action at law for damages would scarcely have afforded plaintiff an adequate remedy. The amount required for 'adequate support' was obviously subject to variation from time to time, involving particularly plaintiff's condition of health and his necessities as well as other factors. An action at law could at most have resulted merely in a judgment for damages sustained prior thereto. A determination as to future damages that would result from defendant's refusal to comply with his undertaking would not have been possible. * * *

"This Court has repeatedly recognized the jurisdiction of a court of equity if the facts involved in litigation are such that a claimed legal remedy, although available, will not afford adequate relief. [citing cases]" pp 275, 276.

Plaintiffs' remedy at law is inadequate, however, only if they may properly claim under the original contingent fee agreement, rather than under the April 12th agreement. Under the latter agreement they would be entitled to claim only that they should be awarded additional shares of Consumers Power stock and a money judgment for damages they may have incurred because of defendant's nondelivery

thereof. Such damages could be determined in a trial at law without difficulty. Thus, the propriety of the chancellor's denial of defendant's motion to dismiss depends upon whether or not the allegations of the complaint, taken as true, would be sufficient to support a decree setting aside the April 12th agreement.

Plaintiffs' complaint alleged that at the time of entering the April 12th agreement:

"Plaintiffs informed defendant that they would accept said offer, reminded said defendant that they were entitled to more than defendant agreed to pay and that they were entitled to 1/3 of the remainder of said trust fund".

Thus the April 12th agreement was a compromise settlement of a disputed claim, that is, it was an executory accord. Had defendant fully performed the terms of the accord, plaintiffs could not have had recourse to recovery upon the original agreement. *Fricke* v. *Forbes*, 294 Mich 375; 6 Corbin, Contracts (1962 Rev), § 1276. However, plaintiffs alleged that the agreement called for defendant to transfer to them 1/3 of the estate's Consumers Power Company stock and that defendant did not fulfill this agreement because the 61 shares she transferred to them after the stock split did not represent 1/3 of the Consumers stock in the estate. If these allegations be accepted as true, as was the practice in ruling upon a motion to dismiss, *Lucking* v. *People*, 320 Mich 495, then plaintiffs would be entitled to rescind the April 12th agreement and sue upon the contingent fee agreement. Since plaintiffs had no adequate remedy at law to enforce that agreement, the chancellor did not err in denying defendant's motion to dismiss.

"When the debtor fails to perform his new promise, or is materially in default, the creditor need not

perform his promise to discharge the old debt, but may rescind the compromise agreement and sue on the original obligation." *Fricke* v. *Forbes,* 294 Mich 375, 381, 382.

See, also, Corbin, *supra,* § 1275.

Defendant also contends on appeal that even if the April 12th agreement were properly rescinded by the chancellor, still he erred in a number of the findings of fact upon which he based his computation of plaintiffs' fee. We have reviewed the testimony and exhibits and are persuaded that the chancellor did not err in determining the amount due plaintiffs on their contingent fee.[4]

The contingent fee agreement, *supra* note 1, provided that plaintiffs were to represent defendant "in connection with said estate and to contest said will." Plaintiffs argued successfully below that the agreement did not require them to represent defendant in connection with the administration of the estate if the will were broken. On this point we believe the chancellor erred. The plaintiffs were to "contest said will and represent [defendant] in connection with said estate." Such language in the context of this agreement could indicate to a layman only that the attorney will represent him as necessary until the matter is finally settled.

Notwithstanding his erroneous conclusion that the agreement did not include plaintiffs' services in the

---

[4] Defendant argues that if any ambiguities did exist as to what the parties had agreed upon they should have been construed against plaintiffs, citing *Roy Annett, Inc.,* v. *Killin,* 365 Mich 389. As in *Killin,* "testimony as to antecedent agreements, communications, and other factors that may help to decide the issue," were introduced which enabled the chancellor, and us, to resolve any ambiguity. This Court in *Killin* quoted approvingly that portion of the circuit judge's opinion which noted that the rule of construction urged by defendant should be applied only when alleged ambiguities cannot otherwise be resolved.

Defendant also argues that dealings between attorney and client should be closely scrutinized for fairness. We have done so and we are not convinced that plaintiffs took any unfair advantage of defendant in their dealings with her.

administration of the estate, the chancellor properly computed the balance due plaintiffs. The chancellor included in the total value of defendant's interest in the estate, of which plaintiffs were to receive one third, $5,000 which they had earlier received as the result of an order entered on their petition in probate court for attorneys' fees. Once the contingent fee was thus determined, the chancellor subtracted therefrom $5,000, as having already been received by plaintiffs. The effect of this computation (and the order granting plaintiffs a 1/3 interest in the trust, *supra*) was to award plaintiffs 1/3 of the net amount received by defendant as their fee for their services in the will contest proceedings and for the services performed by them in the administration of the estate.

Affirmed. Costs may be taxed.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.