862 F.2d 319
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 re Robert C. WOLF; In re Lucile Wolf, dba Wolf Masonry &
Construction, Debtors.
Robert C. WOLF; Lucille Wolf, dba Wolf Masonry &
Construction, Appellants,
v.
JEFFERS, DANIELSON, SONN & AYLWARD, Appellee.
 
 1
 Nos. 87-3975, 87-4272.
 
 
 2
 United States Court of Appeals, Ninth Circuit.
 
 Argued and Submitted Aug. 3, 1988.
Decided Nov. 2, 1988.
 
 3
 E.D. Wash.
 
 
 4
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED IN PART.
 
 
 5
 Appeal from the United States District Court for the Eastern District of Washington (Spokane); Alan A. McDonald, District Judge, Presiding.
 
 
 6
 Before ALARCON and BEEZER, Circuit Judges, and LELAND C. NIELSEN*, Senior District Judge.
 
 
 7
 MEMORANDUM**
 
 
 8
 Robert C. and Lucille Wolf (Wolfs) appeal from the judgment of the district court reversing the bankruptcy court's attorney's fees order. The bankruptcy court rejected the contingent fee agreement but awarded attorney's fees to the law firm of Jeffers, Danielson, Sonn & Aylward (Sonn) based on an hourly rate. The district court held inter alia that counsel was entitled to be compensated for his services pursuant to the contingent fee agreement.
 
 
 9
 The Wolfs contend that the trustee's attorney is not entitled to any additional fees because the state court fully compensated him for his services on behalf of the estate. We discuss each dispositive issue and the facts pertinent thereto under separate headings.
 
 
 10
 We review a bankruptcy court's findings of fact under the clearly erroneous standard and questions of law de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). We review a bankruptcy court's decision independently without deferring to the district court's judgment. Id.
 
 I.
 
 11
 WAS SONN ENTITLED TO ANY FEES?
 
 A. Conflict of Interest
 
 12
 The Wolfs argue that Sonn had "an absolute conflict of interest" by nature of his representation of a creditor, which disqualified him from being employed by a trustee to represent the bankrupt's estate.
 
 
 13
 This contention is readily refuted by 11 U.S.C. Sec. 327(a) (1982), which provides that a trustee in bankruptcy may employ an attorney to assist him in carrying out his duties. Moreover,
 
 
 14
 a person is not disqualified for employment [as an attorney] under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.
 
 
 15
 11 U.S.C. Sec. 327(c) (1984).
 
 
 16
 In the matter before us, no creditor objected to Sonn's representation of the estate and United Pacific Insurance Company (U.P.). Instead, the record shows that U.P. agreed to Sonn's representation of the estate. Furthermore, the application by the trustee for approval of Sonn's employment as his attorney informed the bankruptcy court of Sonn's dual representation. Accordingly, the bankruptcy court did not err in determining that Sonn was entitled to fees or in failing to disqualify him for employment as the attorney for the trustee.
 
 
 17
 B. Consideration for the Contingent Fee Agreement
 
 
 18
 The Wolfs also challenge the award of attorney's fees on the ground that Sonn was already under a contractual duty "to pursue the entire claim of the bonding company and the Wolfs on an hourly basis." The Wolfs contend that Sonn did not give any consideration for the estate's promise to pay an additional contingent fee for "work he [Sonn] had already been hired to perform." The record does not support this contention. The affidavits filed in support of the award of attorney's fees show that, at the time Sonn was employed by the trustee, the Wolfs' claim against the contractor, Voth Brothers Construction (Voth), appeared to be difficult to prove. A substantial question existed whether there would be any recovery in excess of the amount owed to U.P. The trustee asked the Wolfs' attorney to pursue their claim against Voth. Counsel for the Wolfs declined to do so because recovery of any significant amount of money appeared doubtful. Additional investigation and preparation was required to prove the Wolfs' separate claim against Voth.
 
 
 19
 Originally, Voth's counsel offered to settle all claims for $30,000. Sonn was instructed to demand $90,000 so that the Wolfs would recover something. This demand was refused. The judgment after trial was approximately $300,000. Later, Voth agreed to settle for $270,000. The significance of the amount recovered for the estate through Sonn's efforts becomes clear when we consider the fact that the Wolfs' attorney had earlier offered to settle all back charges owed by Voth for $12,714.23.
 
 
 20
 Without the award of damages against Voth, the estate would have been without funds to pay the creditors. As a result of Sonn's success, all the creditors were paid, and the Wolfs received a significant amount of money, as well.
 
 
 21
 The record supports the bankruptcy court's implied finding that Sonn performed services for the estate which were above and beyond his duty to represent U.P. against Voth. The bankruptcy court's determination that Sonn was entitled to additional fees was not clearly erroneous.
 
 C. Equitable Estoppel
 
 22
 The Wolfs assert that Sonn should be equitably estopped from claiming fees in the bankruptcy court in excess of the fees he requested and was granted in the state court proceedings. As discussed above, the record shows that Sonn performed services for the estate in support of the Wolfs' claim against Voth that exceeded his labors on behalf of U.P. Thus, the bankruptcy court's implied finding that Sonn was entitled to additional fees was not clearly erroneous.
 
 
 23
 D. Validity of the Nunc Pro Tunc Employment of Counsel
 
 
 24
 The Wolfs also assert that while the bankruptcy court can enter orders nunc pro tunc, almost all of the hours of service performed by Sonn occurred prior to the signing of the bankruptcy court's order approving his employment. They cite no authority to support their contention that the issuance of a nunc pro tunc order under such circumstances is an abuse of discretion. In light of the fact that the trustee could not interest any other lawyer, including the Wolfs' attorney, in prosecuting their cause of action against Voth in the state court, we conclude that the bankruptcy court did not abuse its discretion in approving Sonn's appointment nunc pro tunc.
 
 II.
 
 25
 WAS THE CONTINGENT FEE AGREEMENT VALID?
 
 A. Effect of the Claim Adjuster's Letter
 
 26
 When Sonn was employed to represent the trustee, counsel was informed that "the Estate had no funds with which to pay him for his services in pursuing this claim [against Voth in the state court] on behalf of the Estate." The trustee also told Sonn he would have to be appointed by the bankruptcy court and that his fees would have to be approved by the court. Sonn was advised that it had been the trustee's experience that "the Court would likely approve a standard one-third contingency fee of any funds recovered on behalf of the Estate." Sonn agreed to represent the trustee on these terms.
 
 
 27
 A trustee may employ an attorney on a contingent fee basis with the bankruptcy court's approval. 11 U.S.C. Sec. 328(a) (1984). The trustee's application for Sonn's appointment was approved on November 22, 1985. The application stated that Sonn would receive as a contingent fee, "one-third ( 1/3) of any recovery in excess of the [$65,000] claim of United Pacific Insurance Company...." The order noted that the appointment was approved "subject to the terms and conditions set forth in said application and 11 U.S.C. Sec. 328." Thus, the bankruptcy court and the trustee faithfully complied with section 328 in employing Sonn.
 
 
 28
 The Wolfs argue that the contingent fee agreement was invalid at its inception because there was no new consideration for Sonn's employment by the trustee to pursue their claim against Voth. They contend that Sonn had already agreed to pursue their entire claim against Voth on an hourly fee basis pursuant to his contract with U.P. The Wolfs base this contention on the contents of a letter sent by U.P.'s claim adjuster to the Wolfs' attorney and to the trustee. The Wolfs rely on the following language from the letter:
 
 
 29
 In the event United Pacific was successful in recovering any money from Voth Brothers or the Wolf subcontract that are in excess of the loss, costs, and expenses incurred by United Pacific in pursuing such claim or cause of action, such funds would be made available or turned over to the trustee in bankruptcy.
 
 
 30
 Contrary to the Wolfs' interpretation, this letter does not obligate Sonn to pursue the Wolfs' claim. The debtors were already required to indemnify U.P. by the terms of their existing bond. U.P. had no duty to pursue the Wolfs' claim on behalf of the estate because the trustee had no funds with which to post the collateral required by the terms of the continuing agreement of indemnity.
 
 
 31
 U.P. was under no duty to pursue its claim against Voth beyond securing a release of all claims against it. Moreover, the letter did not provide for the trustee's approval of any settlement for less than the Wolfs' claim.
 
 
 32
 Finally, the letter did not indicate that the trustee had approved the alleged agreement that Sonn represent the Wolfs. Upon filing of the bankruptcy petition, the trustee, and not the Wolfs, possessed the rights to any claim that the Wolfs had against Voth. Contrary to the claim adjuster's conclusion, Sonn had no enforceable duty to pursue the Wolfs' claim against Voth prior to the court's approval of his employment by the trustee. Because of the risk that prosecution of this claim would be unsuccessful, and in view of the fact that the Wolfs had no assets, no other lawyer was willing to undertake representation of the estate even, on a contingent fee basis. The record supports the district court's finding that Sonn furnished adequate consideration for the contingent fee agreement by promising to provide representation in the action against Voth to recover more than the amount owing to U.P.
 
 
 33
 B. Application of the Contingent Fee Agreement to Proceedings Under Section 328(a)
 
 
 34
 As set forth above, Sonn was informed that the estate had no funds to pay his fees if he agreed to pursue the estate's claim against Voth in state court. The proposed order for approval of his appointment was presented to the court by Sonn and the trustee. This document states on its face that "any award of compensation is subject to further order of court." The order was also conditioned upon compliance with section 328(a). That statute expressly provides for court approval of the terms and conditions of any fee agreement. It further states that
 
 
 35
 the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.
 
 
 36
 11 U.S.C. Sec. 328(a) (1984) (emphasis added).
 
 
 37
 At the time he was employed by the trustee, Sonn was aware that the estate was without funds and that the only source of payment would be one-third of any court award recovered by the Wolfs against Voth. Further, Sonn was aware that, if challenged, he would be required to defend his contingent fee agreement under section 328(a). The contingent fee agreement is silent concerning counsel's right to additional compensation for time spent defending the agreement's validity in the bankruptcy court.
 
 
 38
 In the absence of an express provision to the contrary, it is our view that a contingent fee agreement pursuant to section 328(a) includes all services necessary to obtain final approval from the court of this form of payment. See Hoffman v. Burkhammer, 373 Mich. 187, 128 N.W.2d 503, 507 (1964) (an agreement to represent a client "in connection with said Estate and to contest said Will" would indicate to a layman that the attorney would serve him until the matter was finally settled). Accordingly, the district court erred in awarding hourly fees in addition to the amount payable under the contingent fee agreement.
 
 
 39
 C. Bankruptcy Court Disapproval of the Contingent Fee Agreement
 
 
 40
 The bankruptcy court initially approved the contingent fee agreement. On July 22, 1987, the bankruptcy court reversed itself and awarded Sonn a fee for the services he performed for the estate which were not required for the representation of U.P. We review a bankruptcy court's award of attorney's fees for an abuse of discretion. In re Nucorp Energy, Inc., 764 F.2d 655, 657 (9th Cir.1985).
 
 
 41
 The bankruptcy court made no findings of fact. In announcing its ruling, the bankruptcy judge stated: "I don't think I need any Findings of Law and Conclusions in the case. It is such a complicated matter that I don't know that they add a lot. I think I will just enter the order...."
 
 
 42
 In Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir.1975), cert. denied, 425 U.S. 951 (1976), we held that a trial court should consider twelve factors in determining the amount of attorney's fees to be paid. Id. at 70. The failure to consider such factors is an abuse of discretion. Id. The bankruptcy court failed to apply the Kerr factors.
 
 
 43
 Instead of following the law of this circuit, the bankruptcy judge stated: "I think sometimes we have to improvise to reach a result that isn't totally unfair to anybody." Kerr does not authorize improvisation by trial courts to avoid application of pertinent, dispositive decisions of this court. The district court did not err in setting aside the bankruptcy court's fee award.
 
 
 44
 D. The District Court's Award to Sonn of One-Third of the Amount of the State Court Judgment
 
 
 45
 The evidence concerning Sonn's successful prosecution of the Wolfs' claim, which resulted in a $270,000 settlement, is undisputed. It is also uncontroverted that no other attorney, including the Wolfs' counsel, was willing to pursue their claim against Voth, because the estate was totally devoid of funds. Thus, at the time Sonn was employed by the trustee, a contingent fee agreement was the only means available to assure that the claim against Voth would be prosecuted.
 
 
 46
 Section 328(a) permits the court to allow compensation different from that originally specified in the terms and conditions of the agreement between the trustee and his attorney "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. Sec. 328(a) (1984). No showing has been made that the contingent fee agreement was improvident in light of later developments not anticipated at the time Sonn was employed.
 
 
 47
 The bankruptcy court and the district court found that in representing the estate before the state court, Sonn performed duties beyond those required for the presentation of U.P.'s claim. The evidence in the record supports this finding.
 
 
 48
 It was anticipated at the time Sonn was employed that he would receive no compensation for his services if the state court failed to enter a money judgment in favor of the Wolfs. This risk dissuaded all other attorneys from accepting the trustee's offer of employment to represent the estate in the state court action against Voth. It was also expressly anticipated that if Sonn was successful he would receive one-third of any award granted to the Wolfs. Thus, there are no facts that were unanticipated at the time the trustee employed Sonn, except the success of the state court action and the amount of the recovery.
 
 
 49
 The bankruptcy court noted that its rejection of the contingent fee agreement "was a windfall to the estate, and as it develops, perhaps even a windfall to the debtor...." The fact that the estate and the Wolfs received a windfall as a result of Sonn's efforts demonstrates that the contingent fee agreement was quite provident. The district court did not err in awarding Sonn one-third of the amount awarded to the Wolfs in settlement of their state court claim against Voth.
 
 III.
 
 50
 WAS THE AWARD OF PRE-PETITION CONSULTATION FEES TO SONN VALID?
 
 
 51
 At the time he applied for appointment as the attorney for the trustee in pursuing the estate's claim against Voth, Sonn waived his claim for unpaid fees owed to him by the Wolfs for consultation services performed prior to their filing of a petition for voluntary bankruptcy. Sonn acted to avoid the appearance of a conflict of interest. At the time the contingent fee agreement was rejected, the bankruptcy court sua sponte reinstated the claim and awarded Sonn $1,740.88 for such services. It is not clear to us whether the award was made solely as a consolation prize for the rejection of the contingent fee agreement. If so, the bankruptcy court improperly confused a creditor's claim against the debtor with an award of attorney's fees for services performed at the request of a trustee in bankruptcy.
 
 
 52
 The record does not reflect that the bankruptcy court considered whether it was authorized to require the estate to pay a creditor's claim that had been expressly waived. We have concluded that this issue should be first addressed by the bankruptcy court, after briefing and a hearing, before it is ripe for review by this court.
 
 CONCLUSION
 
 53
 We affirm the district court's order awarding Sonn one-third of the money awarded to the Wolfs as the result of the settlement of their claim against Voth. We reverse the district court's order awarding Sonn additional fees computed at an hourly rate for the defense of the contingent fee agreement. We also reject both parties' claims for attorney's fees for services performed in connection with the appeal to this court. We reverse the order awarding Sonn fees for consultation services rendered to the Wolfs prior to the filing of the bankruptcy petition, and we remand with directions that the bankruptcy court conduct a hearing to determine whether such claim survived Sonn's express waiver of his right to compensation, unless Sonn again indicates that he wishes to abandon this claim.
 
 
 54
 Affirmed in part, reversed in part, and remanded in part.
 
 
 55
 Each party shall bear his own costs.
 
 
 
 *
 The Honorable Leland C. Nielsen, Senior United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3