(No. 5963. June 29, 1934.)

J. N. MOLYNEUX, Respondent, v. TWIN FALLS CANAL
COMPANY, a Corporation, Appellant.

[35 Pac. (2d) 651.]

James R. Bothwell, Vaughn A. Price, Harry Povey and Edwin Snow, for Appellant.

Walters, Parry & Thoman, for Respondent.

SUTPHEN, D. J.—This is an action to recover lost profits on account of an alleged breach of a drainage tunnel contract. The appellant, a Carey Act operating company, advertised for bids in September 1929, for the construction of several tunnels to be drilled from the face of canyon walls back toward lands on its project which had seeped, the purpose being to drain such seeped lands by means of such tunnels. The tunnel involved in the instant case was advertised to be 2,000 feet, more or less, in length.

The respondent was the successful bidder and on September 14, 1929, appellant and respondent entered into a written contract for the construction of the tunnel, by the terms of which respondent was to drill the tunnel according to the specifications made a part of the contract. The contract price was $9 per lineal foot for the first hundred feet, the price increasing 75¢ per foot for every consecutive one hundred feet of tunnel thereafter constructed. Provision was made for monthly estimates as the work progressed and for the retention by appellant of fifteen per cent of the amount earned until the satisfactory completion of the contract. The following quotations from the specifications attached to and made a part of said contract are particularly pertinent to this controversy:

"This contract is not assignable and after the contractor has signed the attached contract he will be liable for its construction. Said tunnel to be driven to an indefinite length, which is to be determined by the Twin Falls Canal Company."

"Purpose of Tunnel Extension.

"This tunnel is being driven for the purpose of releasing seepage water at a level to be indicated by the Twin Falls Canal Company and will be terminated at the point where sufficient quantity of water is released according to the judgment and requirements of the Twin Falls Canal Company. The length of said tunnel cannot be determined for the reason that it is impossible to determine exactly where the desired flow of water will be obtained."

Respondent in his complaint sets forth the execution of said contract and alleges that he began the construction of the tunnel and completed 879.4 lineal feet thereof, when on May 8, 1930, appellant ordered him to stop work. Respondent further alleges that said contract and specifications provide that said work was to be continued and the tunnel driven until the defendant should determine that a sufficient quantity of drainage water was released thereby and that when appellant ordered respondent to stop work it had not in good faith so determined but that appellant continued to thereafter drive said tunnel a distance of 1109.6 lineal feet over and above the number of lineal feet of tunnel constructed by respondent, and that had appellant permitted respondent to proceed with the construction of the tunnel to the same length to which it was then constructed by appellant the respondent would have made a profit of $13,397.25, in which sum respondent sought damages.

Appellant's demurrer to the complaint was overruled and it made answer admitting that the exhibit attached to the complaint is a copy of the contract entered into between appellant and respondent on September 14, 1929; admitting that respondent began construction of said tunnel and continued to work on the same until May 8, 1930, and drove said tunnel a distance of 879 feet; and generally denying all the allegations of respondent's complaint not so admitted. As affirmative defenses appellant alleged that respondent voluntarily ceased work and with the consent of appellant surrendered all his rights under the contract to appellant, and that on May 8, 1930, and prior thereto, respondent and appellant agreed that said contract should be construed to mean and did mean that work on said tunnel might be stopped at any time by the appellant and that the question of whether water was released by the construction of the tunnel was not a determining factor as to when respondent should cease work under said contract, and that pursuant to the construction placed upon

said contract, on May 8, 1930, said contract was terminated by mutual consent.

During the trial respondent was permitted to amend his complaint to conform to the proof by increasing the alleged distance from 1109.6 to 1460.6 lineal feet, representing the amount of tunnel constructed by appellant after it ordered respondent to stop work, and by increasing the amount of damages claimed from $13,397.25 to $19,309.25. The jury rendered a verdict for respondent in the latter amount and judgment was entered thereon, and a motion for a new trial denied. Appellant appeals both from the judgment and from the order denying the motion for a new trial.

Appellant contends that under the terms of the contract it had the absolute right to determine the length of the tunnel, and, therefore could terminate the contract at will without liability on its part for such termination.

On the other hand the respondent contends that under the contract the tunnel was to be driven until the appellant should in good faith determine that a sufficient quantity of drainage water was released thereby, and that even if the appellant had the absolute right to determine the length of the tunnel, the appellant could not terminate the contract before it had in good faith terminated the tunnel.

 In construing a written instrument to determine what is intended by it the court must examine the whole instrument and if the meaning is clear and unambiguous and involves no absurdity or contradiction, the contract must be enforced according to the plain import of the language used. (*Meir-Nandorf v. Milner*, 34 Ida. 396, 201 Pac. 720; *Hinsch v. Mothorn*, 44 Ida. 539, 258 Pac. 540; *Mark P. Miller Co. v. Butterfield-Elder Co.*, 32 Ida. 265, 181 Pac. 703; *Naylor v. Simmons*, 33 Ida. 320, 194 Pac. 94; *Messinger v. Cox*, 33 Ida. 363, 194 Pac. 473.)

 The determination of the meaning and legal effect of such a contract is for the court alone (*Mark P. Miller Co. v. Butterfield-Elder Co., supra; Messinger v. Cox, supra; First Nat. Bank v. Cruickshank*, 38 Ida. 789, 225 Pac. 142), but if the court is unable to determine the meaning of the

contract from its terms, it should then hear testimony of witnesses to determine the meaning and intention of the parties as expressed by the contract (*Wood River Power Co. v. Arkoosh,* 37 Ida. 348, 215 Pac. 975; *Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133) and if there is a conflict in the evidence the question is for the jury under proper instructions from the court. (*Miller Cattle Co. v. Francis,* 35 Ariz. 535, 281 Pac. 211; *Clark v. Herbert,* 132 Okl. 272, 270 Pac. 329; *Standard Acc. Ins. Co. v. Goldberg,* 120 Okl. 108, 250 Pac. 892; *Mitchell v. Vogele,* 125 Okl. 176, 256 Pac. 906; *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775.)

The question whether under the terms of the contract appellant had the right to determine the length of the tunnel at any time regardless of the quantity of water released thereby or whether it could only terminate the tunnel at the point where a sufficient quantity of water was released, should perhaps be first considered.

The provisions of the contract relative to the determination of the length of the tunnel are quoted in the statement of facts and the other portions of the contract throw but little light on this question. The intent of the parties as expressed in the contract is not entirely clear or free from ambiguity in respect to this question. Issues were joined by the pleadings as to the meaning of this phase of the contract. At the trial both appellant and respondent introduced parol testimony with the evident purpose of showing what the intention of the parties was in regard to the determination of the length of the tunnel. Considering the uncertainty as to the intention of the parties in respect to this question as expressed by the contract, and the issue raised therein by the pleadings, the court properly admitted this testimony, but as there was a conflict in the evidence in that regard it would appear that this question could properly have been submitted to the jury for its determination.

The trial court in his interpretation of the contract to the jury did not expressly define the meaning of the contract in that respect, but in view of the instructions

given by the court it is not clear that appellant was prejudiced by reason of the court's failure to expressly determine such question or to submit the same for the determination of the jury.

In instructing the jury as to the meaning of the contract and relative to the legal rights and obligations arising out of said contract the trial court in its Instruction No. 6 says:

"As already hereinbefore in these instructions stated, the interpretation of a written contract is a matter of law for the Court.

"Accordingly, unless you find that a preponderance of the evidence shows that the contract in this case was, after its making, orally modified or abrogated, by mutual agreement of the parties, the rights, duties and obligations of the parties to it are to be determined from the terms of the said written contract. And I instruct you that under the said written contract, if the tunnel mentioned or described in the specifications which are attached to and made a part of the said written, contract, was to be driven or constructed by anyone, or at all, the defendant, the Twin Falls Canal Company, was, under the terms of said contract, bound to permit the plaintiff to build, drive and construct such tunnel; and if the evidence shows that it did not so permit the plaintiff to build any part of such tunnel, but prevented or stopped him from so doing, then the defendant broke its contract and is liable therefor.

"In other words, under this contract had not the right to discharge the plaintiff at the time it did, if you find that it did so discharge him, if the defendant had not then, in good faith, determined that the distance to which the tunnel had then been driven, was as far as it was to be driven by anyone. If you find that the defendant discharged the plaintiff and that at the time of such discharge there was the intention on the part of the Canal Company to continue the construction of the tunnel by itself or by anyone other than the plaintiff, plaintiff's discharge was wrongful and was not excused by the fact, if you find it was a

fact, that the plaintiff might be making an unexpected profit out of the work.

"In determining whether the defendant Canal Company, at the time it discharged the plaintiff, from further constructing said tunnel, if you find that it did so discharge him, had then the intention to continue the construction of the tunnel by itself, or by anyone other than the plaintiff, you are entitled to consider all the evidence upon that point, including all circumstances surrounding the matter which the evidence shows you to have existed."

The court did not interpret the contract to require that the work was to be continued and the tunnel driven until the appellant should determine that a sufficient quantity of drainage water was released thereby, but simply said that appellant could not terminate the contract if there was the intention on its part to continue the construction of the tunnel by anyone other than respondent. This does not appear to be inconsistent with appellant's interpretation of the contract that it could terminate the tunnel at any time.

In all respects other than the question as to when appellant could terminate the tunnel the language of the contract and its meaning is clear and free from ambiguity and it was the duty of the court to instruct the jury as to the meaning and legal effect of such contract. It clearly appears from the contract and specifications made a part thereof that the parties entered into a mutually binding contract for the construction of a tunnel. Both parties were obligated thereunder until the length of the tunnel was in fact determined by appellant and the work completed to the point so determined as the ultimate length. If at the time appellant ordered respondent to stop work it intended to drill the tunnel any additional length and then or later should proceed with the tunnel without having previously in good faith and pursuant to the contract determined to terminate the tunnel it was obligated to let the respondent do the work, and if it did not permit respondent to do such work appellant would, in such case, have breached its contract with respondent.

Appellant contends that the question of good faith of the appellant in stopping respondent from working on the tunnel should have been submitted to the jury. Respondent in this case is not complaining because of a temporary stopping of his work on the tunnel. He seeks damages because he was not permitted to continue the work on the tunnel the distance appellant ultimately drilled it. Even if appellant acted in good faith when it ordered respondent to stop work, it did not terminate respondent's obligation to continue the tunnel nor its own obligation to allow respondent to do the work that was in the future to be done on the tunnel until such time as it in good faith determined to terminate the tunnel.

Appellant also complains that the instruction above quoted in effect directed a verdict for respondent. Considering only the second paragraph of said Instruction No. 6 one might infer, from the language used, that the fact that appellant continued the tunnel, conclusively established that it had not determined to terminate the tunnel at the time it discharged respondent, but, in view of the remaining portion of such instruction and reading it as a whole, we cannot say that such inference is justifiable. The fact that appellant continued the tunnel after stopping respondent from working thereon is not, as a matter of law, conclusive evidence as to appellant's intent in that respect, but is a fact to be considered by the jury whose duty it is to determine that question after taking into consideration all the evidence before it. It appearing that a new trial of this case will be necessary for reasons hereinafter mentioned, Instruction No. 6 should be redrafted to more clearly express the views of this court.

Appellant's first affirmative defense is that respondent voluntarily surrendered all its interest in the contract, accepted payment in full and moved from the job. Its second affirmative defense is that on May 8, 1930, and prior thereto, appellant and respondent mutually agreed that the contract should and did mean that work on the tunnel might be stopped by appellant at any time, and that the contract was

terminated by mutual consent on May 8, 1930. In respect to the allegation to the effect that the contract was modified to mean that work on the tunnel might be stopped by appellant at any time we are again confronted with the conclusion heretofore expressed. It is not apparent that such a modification of the contract would authorize a termination of the contract until appellant had in good faith determined to terminate the tunnel. If appellant, pursuant to such modification of the contract, should stop work on the tunnel without having the intention of also terminating the tunnel it would appear that in such case the work would be stopped only temporarily.

 The last paragraph of Instruction No. 4 given by the trial court to the jury reads as follows:

"And I further instruct you that before the jury would be warranted in finding that a written contract was after its execution orally modified or rescinded the evidence of such oral modification or rescission should to them appear clear, positive and unequivocal."

Prior thereto in said instruction the jury were instructed that the burden of proving that the contract was modified or rescinded was upon the party so asserting and Instructions Nos. 5 and 6 required appellant to prove its said affirmative defenses by a preponderance of the evidence. Appellant argues that all that is required in civil cases is that a fact be proven by a preponderance of the evidence and not more, and contends that the portion of Instruction No. 4 above quoted requires more than a preponderance of the evidence and placed upon appellant a greater burden of proof than the law requires. In certain classes of cases a degree of proof greater than a bare preponderance may be required. (*Morrison v. Pierce,* 47 Ida. 430, 276 Pac. 306; 23 C. J. 26, sec. 1760.) The instant case, wherein the appellant seeks to prove that a written contract was orally modified and rescinded is one of such cases. The courts usually require that the evidence of an oral rescission or modification of a written contract should be "clear and convincing" or "clear and satisfactory." (*Prairie Dev. Co., Ltd., v. Lei-*

*berg,* 15 Ida. 379, 98 Pac. 616; *Black* v. *Silver,* 135 Okl. 198, 274 Pac. 886; *Houghton v. Lawton,* 63 Cal. App. 218, 218 Pac. 475; *Peck v. Stafford Flour Mills Co.,* (C. C. A.) 289 Fed. 43; *John A. Stees Co. v. Willis,* 151 Minn. 192, 186 N. W. 391; *Winkelman v. Erwin,* 333 Ill. 636, 165 N. E. 205; *Selman v. Geary,* 334 Ill. 642, 166 N. E. 455; *Voris v. McIver,* 339 Ill. 340, 171 N. E. 263; *Hayne v. Fenton,* 321 Ill. 442, 151 N. E. 877; *Guldman v. Wilder,* 45 Colo. 551, 101 Pac. 759; *Cooke v. Cain,* 35 Wash. 353, 77 Pac. 682; *Armstrong v. Wheeler,* 86 Wash. 251, 150 Pac. 5; *Dinsmore Sawmill Co. v. Falls City Lumber Co.,* 70 Wash. 42, 126 Pac. 72; 13 C. J., pp. 779, 780, secs. 984, 985.) The recognized value of uniformity in legal rules suggests the use of such words. Words importing any higher degree of proof would in this case be improper and not justified under the issues or proof.

Webster's New International Dictionary defines the words "positive" and "unequivocal" as follows:

"Positive—a. 1. Definitely or formally laid down or imposed; prescribed by express enactment; hence, explicitly or unqualifiedly expressed; admitting of no doubt, condition, qualification, or discretion; compelling assent or obedience; peremptory; undisputable; explicit; definite; decisive; also Colloq., downright; absolute; as, a positive declaration, promise, instruction, proof, lie. . . . . "

"Unequivocal—a. Not equivocal, not doubtful, not ambiguous, clear, sincere; plain; as unequivocal evidence; unequivocal words."

In Corpus Juris these words are defined as follows:

"Positive—Absolute; arbitrarily laid down; certain; confident; decisive; determined by declaration, enactment, or convention, and not by nature; direct; express; incontestible; indisputable; not admitting of doubt, condition or qualification; not admitting of doubt or denial; not doubtful; opposed to circumstantial; sure; that which is clearly expressed; undeniable." (49 C. J., p. 1089, sec. 1.)

"Unequivocal:—The term is defined to mean, among other things, clearly demonstrated, free from uncertainty, or with-

out doubt. When used with reference to the burden of proof, it implies proof of the highest possible character, and imports proof of the nature of mathematical certainty." (65 C. J. 1226.)

In the case of *Shugart v. Halliday*, 2 Ill. App. 45, at page 51, the court said:

"The fourth instruction is erroneous . . . . This instruction says 'Such intent to dedicate must be unequivocally and satisfactorily proven.' This is a stronger expression than 'beyond all reasonable doubt'; much stronger than 'clear conviction' . . . . Unequivocal means without doubt, without room to doubt (Webster) . . . . Nor will the other words 'it is incumbent upon the defendants to prove by a preponderance of the evidence' . . . . save the instructions from the destructive effect of the other words above. . . . . "

In the case of *Merrick v. Ditzler*, 91 Ohio St. 256, 110 N. E. 493, the court said:

"The term 'unequivocal' is defined to mean among other things 'without doubt,' 'clearly demonstrated,' 'free from uncertainty.' It implies proof of the highest possible character equalling, if not exceeding, the proof required of the state in a criminal proceeding. It imports proof of the nature of mathematical certainty—something that in human affairs it is all but impossible to obtain."

It is clearly apparent that the words "positive and unequivocal" have a stronger meaning than "clear and satisfactory" or "clear and convincing." The instruction in question related to one of the important issues in the case, and placed upon appellant a greater burden of proof than the law requires and was prejudicial.

Appellant complains that no instruction was given to the effect that if its affirmative defenses were established by the evidence the respondent might not recover. In Instruction No. 6, heretofore quoted the trial court said:

"Accordingly, unless you find that a preponderance of the evidence shows that the contract in this case was, after its making, orally modified or abrogated, by mutual agreement of the parties, the rights, duties and obligations of

the parties to it are to be determined from the terms of the said written contract. . . . . ''

The jury would necessarily infer from such instruction that if such affirmative defenses were established respondent could not recover; however, the court might more properly have instructed the jury in the affirmative.

The appellant also complains of Instruction No. 2 wherein the court instructed the jury relative to the issues raised by appellant's answer. The court therein advised the jury as to the admissions made by appellant of facts alleged in the complaint and as to appellant's affirmative defenses, but apparently inadvertently overlooked advising the jury to the effect that the appellant generally denied all the allegations of the complaint not so expressly admitted. This oversight should of course be corrected upon the retrial of the case.

Appellant also contends that respondent's acceptance of the payment for the final estimate of fifteen per cent retained by appellant from the estimates up to the time respondent ceased work, should be considered as conclusive proof that respondent agreed that his work and the contract had been completed. The acceptance of the payment for the final estimate was a fact to be considered by the jury in passing upon the question of abrogation, rescission, or abandonment of the contract, but such acceptance of said final estimate, representing moneys actually earned and not in dispute, did not constitute a release by respondent of his claim for damages unless he accepted the payment with that understanding. (*Proctor v. Hobart M. Cable Co.,* 145 Mich. 503, 108 N. W. 992; *Walston v. F. D. Calkins Co.,* 119 Iowa, 150, 93 N. W. 49; *National Pecan Groves Co. v. Redmond,* 42 Ga. App. 712, 157 S. E. 536; *Gross v. Wallen,* 182 Iowa, 429, 165 N. W. 993; *Murphy v. Menke Grocery Co.,* (Mo. App.) 201 S. W. 650; *Pitts v. National Independent Fisheries Co.,* 71 Colo. 316, 206 Pac. 571, 34 A. L. R. 1033.)

The inference to be drawn from the acceptance of such retained estimate by respondent was a matter for the jury to determine in passing upon appellant's affirmative de-

fenses and the inference imputed to such fact by appellant is not conclusive as a matter of law.

Appellant next says that by respondent's evidence alone the proof is conclusive that respondent agreed to a modification, a rescission and an abrogation of the contract. This contention does not justify our taking the space herein to recite respondent's testimony in this respect. The intent of the respondent to abrogate or rescind the contract, or to modify its terms to such an extent as to bar his right to recovery herein, is not so clear as to justify the court in determining he had such intent. Whether there was an intent on respondent's part to surrender his rights under the contract, rescind, abrogate or modify it was properly a question for the jury after a consideration of all the evidence.

Respondent's original complaint claimed damages on the basis that the length of the tunnel was determined by appellant at 1109.6 feet from the point respondent quit work therein. During the trial he was permitted to amend his complaint to read 1450.6 feet instead of 1109.6 feet and to increase his claim for damages from $13,397.25 to $19,309.25, in view of evidence that since the commencement of the suit appellant had continued the construction of the tunnel an additional 341 feet. Appellant objected to the amendment on the ground that "the cause of action had not accrued at the time suit was started on this last portion." Appellant now contends that this matter of additional length of tunnel completed by appellant since the commencement of the suit should have been set out in a supplemental complaint. Sec. 5-814, I. C. A., provides:

"Supplemental complaint or answer.—The plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint, or answer, alleging facts material to the case occurring after the former complaint or answer."

It is conceded by respondent that this matter was a proper matter for supplemental complaint, but he contends that it was also a proper matter for amendment and that even conceding it should have been set up by supplemental

complaint, there was no showing that appellant was in anywise injured by the court permitting an amendment to the complaint rather than requiring a supplemental complaint to be filed.

If the cause of action existed at all it existed at the commencement of the suit and the amendment in question did not set up a new or different cause of action or change the substance of the original complaint. These facts bring the matter within the exception to the rule requiring matters which have accrued since the original pleading was filed to be introduced into the case by supplemental complaint, and the trial court in the exercise of its sound discretion had the right to permit the amendment instead of requiring respondent to file a supplemental complaint. (*Minard v. Schumaker*, 117 Wash. 599, 201 Pac. 909; *Northrop v. Mercantile Trust & Deposit Co.*, 119 Fed. 969; 49 C. J., p. 506, sec. 670.) There appears to have been no abuse of discretion on the part of the trial court in this respect.

■■ Appellant next complains of Instruction No. 7, which reads as follows:

"In general the damages to be allowed a contractor for wrongful discharge preventing him from completing the work is a sum that would compensate him for his loss of profits, measured by the difference between the cost of construction and the contract price.

"In this case, if you find for the plaintiff on his first cause of action, you should allow him damages equal to the amount of the profits he would have made on the part of the tunnel he did not finish, if the defendant had not refused to permit him to proceed with the work. Those profits are the difference between the cost to plaintiff of completing the tunnel as shown to you by the evidence in this case, and the amount he would have earned under the contract had he been permitted to finish the tunnel, for the portion which he did not himself complete. In arriving at those profits you should consider only the cost of construction and the contract price on the part of the tunnel plaintiff did not construct.

"In order that the plaintiff may recover profits lost he must establish that he would have made a profit by evidence that is reasonably clear and certain to the point."

Appellant says this instruction took from the jury the right to determine the length of the tunnel upon which respondent's damages were to be computed and contends that the measure of respondent's damages was his profits on that portion of the tunnel beyond the part built by him to a point where the appellant in an honest exercise of discretion under the contract would have determined to terminate the tunnel.

Under the terms of the contract respondent was obligated and had the right to drill the tunnel to such point as the appellant in an honest exercise of discretion under the contract did determine to terminate it. The question of fact for the jury to determine, from the evidence, was at what point, in the exercise of an honest discretion, the appellant did in fact terminate the tunnel. We are not here concerned with the question as to what it might or possibly would have done but are concerned with what it actually did do.

The jury are not bound to take the present length of the tunnel as conclusive in deciding this question, as it is conceivable that appellant did in an honest exercise of its discretion under the contract determine to terminate the tunnel at a point short of its present length. Such a termination of the tunnel would in such case result in a termination of the contract, and a subsequent extension of the tunnel would not be a breach of such contract, although, in case of a dispute as to whether it had previously in good faith terminated the tunnel, the fact that it had subsequently extended the tunnel might be strong evidence that it had not previously in good faith terminated such tunnel.

It is also conceivable that a portion of the tunnel constructed by appellant may have been constructed by it in good faith simply for the purpose of determining costs and that such work was done by it with the consent of respondent as contended by appellant.

If the jury should so find, it properly should, in determining the length of the tunnel upon which damages should be awarded respondent, deduct from the length of the tunnel as determined by them, the portion thereof so constructed in good faith with the consent of respondent. Upon the retrial of the case the instruction last above quoted should be redrafted to eliminate the inference that the present length of the tunnel is conclusive as to the length of tunnel upon which respondent's damages are to be computed.

Appellant also complains that Instruction No. 7 fails to take into account that there should be deducted from the contract amount a reasonable amount for release from care, trouble, risk and responsibility which would have attended a full execution of the contract by respondent.

This court in the case of *Harris v. Faris-Kesl Const. Co.*, 13 Ida. 211, 89 Pac. 760, has laid down the following rule:

"In cases where prospective profits may be recovered, the rule for arriving at the prospective profits is to ascertain the difference between the cost of doing the work and what the claimant was to receive for it, making therefrom a reasonable deduction for the less time engaged and for the release from the care, trouble, risk, and responsibility attending a full execution of the contract."

In view of such rule it would appear that upon the retrial of this case the instruction should be further amended to fully state the rule above quoted.

Finally, appellant says that respondent's evidence in support of his claim for lost profits omits the items of supervision, superintendence, expense of moving equipment, value of respondent's services, the hazards of the work, and the release from care, trouble, and responsibility. Appellant contends that the burden was upon respondent to prove the amount of his lost profits and that this involved his proving the values of these items which it claims were necessary in order to determine the amount of lost profits.

The law places upon respondent the burden of proving the extent of his damages and he should properly be required to prove all elements reasonably necessary to establish the amount of his lost profits claimed as damages.

In determining the amount of profit we must consider the cost to respondent and not what it might have cost someone else using different methods. These facts are better known and more readily proven by the respondent than by the appellant who would clearly have much more difficulty in proving such costs.

It was incumbent upon the respondent contractor to prove the constituent elements of his costs, and he should not be permitted to omit items of his expense which, in view of the evidence in the case, suggest themselves, and independent of which no verdict approximating justice could be rendered. (*Sullivan v. McMillan*, 26 Fla. 543, 8 So. 450.)

Elements of cost which a claimant for lost profits is required to prove must necessarily depend largely. upon the particular facts in each case, bearing in mind that the court is concerned with claimant's costs and not with what it might have cost someone else.

Respondent introduced in evidence a detailed statement of his estimated costs and claimed that he would have been to no expense for supervision or superintendence; that the hazards of the work were fully known at the time of the trial and actual conditions were considered in his estimate of costs; that the continuance of the work on the tunnel would have involved no additional equipment; and that he included in his estimate of costs his own services when actually working on the tunnel. The evidence in the case does not suggest that the items last mentioned necessarily were items of the respondent's costs in the performance of the contract, and aside from this, appellant has not shown that they were.

The nature of the case is such and the evidence introduced suggests, however, that some deduction at least should have been made for the less time engaged and for the release from care, trouble, risk and responsibility attending a full execution of the contract. These items were not included in respondent's proof of his costs, and no deductions on account of such items were made by the jury. These items should have been considered and a reasonable deduction made therefor.

It is not necessary to incumber this decision with a discussion of respondent's motion to dismiss the appeals for the reason that this court has permitted appellant to correct the record in the respects in which it appears to have been defective, and has considered the case on its merits.

The case is remanded for a new trial for the reasons hereinbefore mentioned.

Costs awarded to appellant.

Givens, Morgan, Holden and Wernette, JJ., concur.

Petition for rehearing denied.