399 P.2d 635

Max A. **BOESIGER** and Ruth H. Boesiger, husband and wife, Plaintiffs-Appellants,

v.

Mario **DeMODENA**, Defendant-Respondent.

No. 9425.

Supreme Court of Idaho.

March 2, 1965.

Robert F. McLaughlin, Mountain Home, for appellant.

Clemons, Skiles & Green, Boise, for respondent.

KNUDSON, Justice.

Appellants, Max A. Boesiger and Ruth H. Boesiger, husband and wife (plaintiffs), were the owners of property described as lots 2 to 6 inclusive of Block 1, and lots 11, 12 and 13 of Block 3 of Boesigers Subdivision No. 1, an addition to the city of Mountain Home, Idaho. Respondent Mario DeModena (defendant) owned lots 75 and 76 in Jerome Addition, which lots were located directly across Third East Street from the said property owned by appellants.

Under date of July 6, 1961 said parties entered into a "Real Estate Agreement" of which the following is a copy:

### REAL ESTATE AGREEMENT

"THIS AGREEMENT, made and entered into this 6th day of July, 1961, by and between MAX A. BOESIGER and RUTH H. BOESIGER, husband and wife, parties of the first part, hereinafter referred to in the singular as 'BOESIGER,' and MARIO De-MODENA, party of the second part, hereinafter referred to as 'DeModena.'

### WITNESSETH

"WHEREAS, Boesiger owns Lots 2 to 6, inclusive of Block 1, and Lots 11, 12 and 13, of Block 3, of Boesigers Subdivision No. 1, which lots are at the present time unimproved building lots, and which lots lie adjacent to and fronting on Third East Street, in Mountain Home, Idaho, and

"WHEREAS, DeModena owns Lots 75 and 76, of Jerome Addition, Elmore County, Idaho, which lots lie adjacent to and fronting on said Third East Street, directly across the street from the above described lots of Boesiger, and

"WHEREAS, DeModena intends to use and develop his said property as and for a trailer park, and Boesiger, as owner of lots directly across the street therefrom, desires to protect the value of said lots and would have the privilege of objecting to the zoning of the said DeModena property as and for a trailer park by the City of Mountain Home, Idaho,

"NOW, THEREFORE, in view of the foregoing recitals, and for the purpose of obtaining the maximum benefit and use to each of the parties of their respective properties, the parties do hereby agree as follows:

"1. DeModena agrees to purchase from Boesiger, and Boesiger agrees to sell to DeModena, Lots 2 to 6 inclusive, of Block 1, and Lots 11, 12 and 13 of Block 3, in Boesigers Subdivision No. 1, for the purchase price of Two Thousand Dollars ($2,000.00) per lot. Boesiger shall convey said lots to DeModena by good and sufficient Warranty Deed upon payment in full of cash for said lots, in the amount aforesaid. Said payments shall be made and said conveyance shall be delivered upon completion of annexation and zoning as a trailer zone the above described property of DeModena.

"2. Boesiger has previously agreed with the City of Mountain Home, Idaho and with the Veterans' Administration and the Federal Housing Administration of the United States of America, to place certain off-site improvements on said lots, consisting of side-walks, curbs and paving adjacent to the lots in Block 1, and underground concrete irrigation pipe to replace the

**342**

ditch running along the west side of said lots, and sidewalks, curbing, extension of paving and water line on the lots in Block 3, together with underground concrete irrigation pipe to replace the ditch running along the lots in Block 3, all of which, pursuant to said agreement, is to be accomplished by Boesiger on October 1, 1961. The parties agree that this agreement and the conveyances herein provided for shall in no way effect Boesiger's responsibility to perform said agreement and Boesiger ratifies and confirms said agreement and agrees to perform all things therein provided in a good and workmanlike manner and in accordance with the standards of the Federal agencies involved, and the City of Mountain Home, Idaho.

"3. Boesiger further agrees, a— part of the consideration for the sale of said lots, to give to DeModena the plans in his possession for houses to be built on each of the lots above described. In the event Boesiger desires to repurchase said plans from De-Modena, the parties agree that he shall have the right to do so upon the payment of Two Hundred Five Dollars ($205.00) for each of such plans.

"4. Boesiger agrees to purchase from DeModena, and DeModena agrees to sell to Boesiger, Lots 11, 12 and 13 in Block 3, in Boesigers Sub-division No. 1, for the purchase price of Fifteen Hundred Dollars ($1,500.00) per lot, cash, said purchase to be made on or before October 1, 1961.

"5. It is understood and agreed that Boesiger owns other lots in Boesiger Subdivision No. 1, which would entitle him to register protest against the installation of the trailer park West of Third North Street by DeModena. Boesiger agrees that as to any of such lots and any other properties owned or held by Boesiger that he will waive all objection to the installation of such trailer park and the zoning therefor.

"7. It is understood and agreed by and between the parties, any and all provisions of this contract to the contrary notwithstanding, that this agreement is contingent upon the action of the City of Mountain Home, Idaho, in annexing and zoning for a trailer court the property of DeModena hereinabove described.

"IN WITNESS WHEREOF, the parties have hereunto set their hands this 6th day of July, 1961.

/s/ MAX A. BOESIGER
/s/ RUTH H. BOESIGER
 BOESIGER
/s/ MARIO DeMODENA
 DeModena

"STATE OF IDAHO }
County of Elmore } ss.

"On this 6th day of July, 1961, before the undersigned, a Notary Pub—

lic in and for the State of Idaho, personally appeared MAX A. BOESIGER and RUTH H. BOESIGER, husband and wife, and MARIO DeMODENA, known to me to be the persons whose names are subscribed to the within and foregoing Real Estate Agreement and acknowledged to me that they executed the same.

"IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

/s/ FRANCIS H. HICKS

(SEAL) Notary Public for Idaho
Residing at Mountain Home, Idaho"

Respondent failed and refused to perform the contract and under date of February 20, 1963 appellants commenced this action on the contract. On June 13, 1963 respondent filed a motion to dismiss appellants' action upon the ground that the complaint failed to state a claim upon which relief could be granted. Respondent attached to said motion and filed therewith his affidavit stating that on the date of the contract and for many years prior thereto and at all times since said date, he has been married to and living with Katherine DeModena and that all property acquired by respondent in Mountain Home, Idaho, was the community property of affiant and his said wife.

On July 10, 1963, appellant Max A. Boesiger filed his affidavit stating in substance that at the time of entering into the contract he was not acquainted with the marital status of respondent and assumed that he, respondent, was a single man contracting in his own right; that respondent's attorney prepared all of the legal forms necessary to the agreement between the parties.

The trial court treated the motion as one for summary judgment and on August 14, 1963 entered judgment dismissing the action pursuant to said motion. This appeal is from said judgment.

■ Under appellants' first assignment of error it is contended that the trial court erred in treating respondent's motion to dismiss as a motion for summary judgment. There is no merit to this contention. Matters ouside the pleading, in the form of affidavits, were presented to and considered by the court and under I.R.C.P. Rule 12(b) it is the duty of the court to treat such motion to dismiss as a motion for summary judgment. Rush v. G–K Machinery Co., 84 Idaho 10, 367 P.2d 280.

■ Appellants also contend that the motion to dismiss was insufficient in that it failed to state with particularity the grounds therefor. The motion clearly states the ground pursuant to I.R.C.P. Rule 12(b) (6) that there was a failure "to state a claim upon which relief can be

granted" and was supported by the affidavit of respondent (defendant). This motion challenged the entire claim for relief and was sufficient.

It has long been established that when the sufficiency of a complaint is challenged by such motion all well-pleaded allegations together with all reasonable inferences which can be drawn therefrom must be construed in the light most favorable to plaintiff and taken as true. Williams v. Williams, 82 Idaho 451, 354 P.2d 747.

Appellants argue that there are at least three genuine issues of fact in the case at bar and for that reason it was error to grant the motion to dismiss. They state such issues to be: (1) whether respondent was a married person; (2) whether the agreement could be divided into separate enforceable portions; and (3) an issue of fact involving the law of agency and its application to this case.

Referring to the first above claimed issue, upon which appellants principally rely, the record shows that appellant's counteraffidavit merely states that he (Max Boesiger) "was not acquainted with the marital status of the defendant, Mario DeModena, and assumed that the defendant was contracting in his own right and that he was a single man." We recognize that generally the party opposing such a motion is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists, however we cannot construe appellant's quoted language as being a denial of respondent's affidavit to the effect that he was, at all time during his negotiations with appellants, a married man. I.R.C.P. Rule 56(e) provides:

"Rule 56(e) * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

The trial court did not consider appellant's affidavit as being a denial of the marital status of respondent as stated in his affidavit and the court correctly construed appellant's showing.

We do not agree that any issue of fact concerning the law of agency is involved. The divisibility of the contract involved will be discussed later in this opinion.

The major question presented by this appeal is appellant's contention that the trial court erred in concluding that the rule of law announced in Childs v. Reed, 34 Idaho 450, 202 P. 685, is controlling under the

facts of this case. The trial court in its Memorandum Decision stated:

"Thus the only issue is whether plaintiffs can enforce the contract in question, as it is written. It seems clear that it is unenforceable under Idaho law, because of lack of mutuality at its inception. Defendant relies on Childs vs. Reed, 34 Idaho 450, 202 Pac. 685, which so holds. Plaintiffs have not shown any facts or law which take this case out of that rule, in my opinion.

"The agreement for resale and reconveyance of three of the lots to plaintiffs by defendant would be unenforceable, because the lots in question as soon as conveyed to defendant by the contract would be community property of defendant and his wife. Her signature and acknowledgment would be necessary for reconveyance to plaintiffs. The wife could not be forced by the Court or by defendant to execute such conveyance under Idaho decisions. No estoppel of the wife of defendant is pled, proved or inferred."

The Childs case is not controlling in this case. The facts are distinguishable in that under the contract involved in the Childs case the husband, as purchaser, contracted to convey, as a part of the purchase consideration, other real property which was admittedly community property then owned by the purchaser and his wife. The wife did not join in the purchase contract and refused to execute the deed of conveyance of the community property. In reversing the trial court decree ordering specific performance this court held that such contract was unenforceable since it was in violation of I.C. § 32–912, which provides:

"The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: provided, that the husband or wife may, by express power of attorney, give to the other the complete power to sell, convey or encumber said community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."

In the instant case the property concerning which respondent is obligated under the contract to reconvey was not, at the time of entering into the contract, the community property of respondent and wife, and we consider it to be one of the principal questions to be resolved by the trial court to determine the nature or quality of any

interest the community may have acquired to said three lots, under the contract involved.

In Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976, appellant Morgan, contemplating an investment with community funds, entered into a contract to purchase from the respondent Firestone Tire & Rubber Co. three lots of real estate. As an inducement to appellant to purchase and as a part of the consideration therefor, the seller agreed to lease the premises for a period of ten years at a rental of $190 per month; the lease to be entered into contemporaneously with the passing of title under the contract. The trial court held that since the purchase was to be made with community funds and the lease was to be for more than one year, the entire agreement was void for failure of appellant and wife to join in signing and acknowledging the contract. This court held that since the husband, in order to acquire the property for the community, agreed, as agent for the community, by an indivisible contract with dependent covenants, that the property, at the moment of acquisition, should be subject to a lease in favor of the vendor, the contract was enforceable. See also Munro v. McAllister, 34 Idaho 638, 203 P. 286.

█ This court has recognized that the husband as manager of the community property may purchase with community funds, property which is subject to liens, reservations and exceptions and that it is unnecessary for the wife to join with her husband in the execution of an instrument by which such property is acquired (Morgan v. Firestone Tire & Rubber Co., supra).

█ In the instant case respondent husband, being desirous of acquiring property for the community, as managing agent thereof agreed by a written contract, under which property other than the three lots (11, 12 and 13 of Block 3) was being acquired for the community, that at the time of acquisition said three lots were subject to an obligation on the part of respondent to reconvey. As a general rule the character of community property vests at the time of its acquisition, and the wife's interest, if any, vests at that time. Vanek v. Foster, 74 Idaho 532, 263 P.2d 997. We recognize that the intent of the parties to a written agreement is, if possible, to be ascertained by the language contained therein. It is clear that the annexing and zoning of respondent's property for trailer park purposes was a contingency that must take place in order to give life to the agreement. However, after careful reading of the contract involved, we are unable to determine the purpose and intent of the parties in providing for the conveyance by appellant and a reconveyance by respondent of the three lots to which we have referred. To that extent we consider this contract ambiguous and conclude that evidence should be received and considered to determine the

purpose and intention of the parties. Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264; Wohlschlegel v. Holst, 81 Idaho 470, 346 P.2d 1051; Wood River Power Co. v. Arkoosh, 37 Idaho 348, 215 P. 975.

It is noted that the real property which, in addition to said three lots, is to be conveyed by appellant to respondent is described in the contracts as "lots 2 to 6, inclusive, of Block 1," where in appellants' complaint said property is referred to and described as "lots 2, 3, 4 and 5 of Block 1."

■ The contract referred to provided for the conveyance of other property and contained other covenants which were to be performed by the respective parties to it. Under its provisions a different consideration per lot is provided for the conveyance to respondent of said three lots than is specified as consideration for the reconveyance thereof by respondent. Whether the parties have thereby apportioned the consideration relative to said three lots, in such manner as to make it a divisible contract is also a question to be resolved. By this statement we do not imply that apportionment of consideration is a fixed legal standard by which the divisibility or indivisibility of a contract is to be determined, but we do regard it as a factor which may be considered.

■ Whether a contract is entire or severable depends upon the intention of the parties. Morgan v. Firestone Tire & Rubber Co., supra; Durant v. Snyder, supra. The general rule is stated in 17A C. J.S. Contracts § 331, p. 302, as follows:

"As a general rule it may be said that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent; * * *."

■ A contract may both in its nature and by its terms be severable and yet rendered entire by the intention of the parties. We think that perhaps the best test is whether all of the things, as a whole, are of the essence of the contract. That is, if it appeared that the purpose was to take the whole or none, then the contract would be entire; otherwise, it would be severable. Wooten v. Walters, 110 N.C. 251, 14 S.E. 734, 736. The divisibility of the subject matter, or the apportionment of the consideration, while they are both items to consider in determining whether a contract is entire or severable, are not conclusive. Waddell v. White, 51 Ariz. 526, 78 P.2d 490, 496.

■ The intention to be bound severably must appear. Otherwise, by enforcing less than the whole, the court imposes upon the parties a contract to which

they have not assented, and which in all likelihood they would not have voluntarily made. The courts should not infringe the freedom of contract by construction. Coppedge v. Leiser, 71 Idaho 248, 229 P.2d 977.

 In the case we are here considering, the respondent, as agent of the community, agreed, as he had a right to do, that whatever title was being acquired by him or the community he represented, as concerns the said three lots, was simultaneously subject to an obligation to reconvey on or before October 1, 1961. It is clear that whatever title was intended to pass by appellants' conveyance of said lots, was burdened with and subject to a covenant to reconvey which constituted a part of the consideration for the entire contract. The obligation to reconvey was prior to any right or title to be acquired by the respondent or the community he represented. Munro v. McAllister, supra; Morgan v. Firestone Tire & Rubber Co., supra.

The questions or issues we have mentioned may be affected by further pleadings or evidence and for that reason we refrain from further comment.

The judgment of dismissal is reversed and the cause remanded with instructions to reinstate appellants' complaint. Costs to appellants.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.