438 P.2d 653

**G. Harold ROGERS dba Emerald Realty,
Plaintiff-Appellant,**

v.

**Denver HENDRIX and Eunice Hendrix, husband and wife, Defendants-Respondents.**

No. 10014.

Supreme Court of Idaho.

March 20, 1968.

Derr, Derr & Walters, Boise, for appellant.

Louie Gorrono, Emmett, for respondents.

McQUADE, Justice.

This is an action by a real estate broker for commission claimed due on a listing agreement or broker's employment contract between the broker and prospective sellers of a farm. The complaint alleges the broker "secure[d] a buyer ready, willing and able to purchase said real property [the farm] under the terms and conditions specified by the defendants [sellers, a husband and wife] in said *Employment* contract [the listing agreement]." The action was tried before a jury which rendered verdict for the prospective sellers,

and the district court entered judgment on that verdict. The judgment is reversed and the action remanded for a new trial.

May 10, 1966, appellant G. Harold Rogers, a Boise real estate broker (dba Emerald Realty), entered into an open listing agreement (real estate broker's employment contract) with respondents Denver and Eunice Hendrix, concerning sale of their forty-acre farm near Emmett, Idaho.

The agreement employed appellant "to sell or exchange the property described hereon at the selling price and on the terms noted," and it provided for payment of a commission (6% of "said selling price"): "In the event that you * * * shall find a buyer ready and willing to enter into a deal for said price and terms or such other terms and price as I may accept * * *." The terms of sale listed in the agreement state: "Selling price, free of encumbrances [printed]: [written] $40,000.00; Terms [printed]: [written] 29% down bal contract (negotiate) may consider a contract in trade. Fall possession (Sept)."

Appellant Rogers testified that before he had sought this listing, he knew Linda and Arthur Watkins of Meridian, Idaho, were interested in purchasing a farm like respondents. A few days after the listing agreement had been executed, appellant brought the Watkinses to see the property. May 14, 1966 the Watkinses executed an earnest money agreement, in which the blank spaces had been filled by appellant, offering to purchase the property according to stated terms, and as earnest money they deposited $500.00 with appellant. May 16, 1966, respondents signed this document, thereby accepting the offered terms and agreeing also to pay appellant as broker a commission of $2,400.00.

The agreement provided payment was to be:

$5,500.00 cash (plus the deposited $500.00) on or before possession date;

$13,600.00 "all cash subject to a mtg.[1] in that amount or more";

$20,400.00 "in the form of a land contract on the property (80 acres) buyers [previously] sold * * * payable at the rate of $250.00 per mo Incl 6% beginning Feb. 1, 1967."

However, appellant himself acknowledged or notarized the four signatures on the earnest money agreement and, as will be presently discussed, this fact caused the trial court to reject the document when appellant offered it in evidence. Thus, the jury never saw this document.

A contract for sale of the listed property was drawn up on June 15 or 16, 1966. There is a good deal of testimony concerning this contract, but the document itself was not introduced in evidence. Apparently one of its terms provided that the Watkinses were to pay interest during the last half of 1966, on a $15,000.00 loan,[2] the proceeds of which ($13,600.00) were to be paid immediately to respondents, though respondents would not tender their farm to the Watkinses until January 1967. In any event, respondents signed the contract but the Watkinses refused. Linda Watkins testified:

"A. It didn't have in it what was supposed to be in it as far as we were concerned.

"Q. In other words, you did not agree to the terms and conditions?

"A. I didn't like that contract at all and I told you so before. I think you know that."

June 17, 1966, a new contract was prepared. It contains two provisions of special pertinence: an express statement that Watkinses would not guarantee the covenants or payments of the $20,400.00 land contract (on their previously sold 80 acre property) which they were to assign as part payment under their agreement with respondents; and that until respondents tendered possession of the farm, they, respondents, were to pay interest on the $15,000.00 loan to be borrowed by Watkinses. This new contract was signed by Watkinses, but now respondents refused.

Appellant testified respondents' only objection to the terms of the second contract had been the interest provision. However, both respondents testified the no-guarantee clause was another reason for their non-acceptance. On cross examination, appellant's attorney asked respondent wife: "It wasn't guaranteed in the contract that you signed before [first contract], was it?" She replied, "I don't remember, it was on the new one that they didn't." As mentioned above the first contract was not introduced in evidence.

Respondents had prepared a warranty deed dated June 17, 1966, to enable the Watkinses to obtain mortgage money from the Federal Land Bank. They refused to deliver it because they did not approve the second contract. Nevertheless, June 13, 1966, the loan committee of the Federal Land Bank Association of Boise had approved a $15,000.00 loan (secured by a mortgage on respondents' property) for the Watkinses. This was subject to approval by the Federal Land Bank of Spokane. That approval was given June 22, 1966. At Watkinses request, the loan application was cancelled after approval.

Appellant testified respondents' only objection to the second contract had been the interest provision.

---

1. According to undisputed testimony, this language meant Watkinses would attempt to get a loan with proceeds of $13,600.00 by placing a mortgage on respondents' property. For this purpose, respondents agreed to and did prepare a deed to the property, absolute on its face, in favor of Watkinses. However, the deed was never delivered apparently because of the later disagreements described in the text following.

2. Interest was at 5½% making the total interest slightly more than $400.00 for six months. Appellant, however, testified that by applying the loan's proceeds to existing debts, respondents would gain on the transaction.

After respondents' refusal to sign the new contract, appellant himself offered first to pay part and then all of the disputed interest. Respondents still refused. Each testified that by the time when appellant offered to pay the interest they had lost trust in him and had become skeptical of the whole deal. The general feeling that appellant was trying to hurry the transaction also disillusioned respondents. They were also bothered because buyers and sellers were never personally brought together by appellant except for the day when the Watkinses first visited respondents' property. In this regard, respondents each testified appellant had offered to cut his commission by $400.00 to $2,000.00 for a quick sale.

At the time of trial, respondents still owned their forty-acre farm. There was no allegation that at the time of trial the Watkinses and respondents were still considering a sale. Indeed, Linda Watkins testified she and her husband had lost all interest in purchasing respondents' farm. Over objection to materiality, Linda Watkins also testified the failure to close the deal had caused no bad feelings between the Watkinses and respondents.

■ There is no dispute about the basic principle of law underlying the present action: if a broker who has contracted with a prospective seller to procure a ready, willing and able purchaser for the seller's real property presents a buyer ready, willing and able to buy on terms listed by the seller with the broker or on other terms which the seller accepts, in the absence of special conditions in the broker's employment contract, the broker is entitled to his commission.[3] The district court recognized this principle and the judge so instructed the jury.[4] But note that by this statement of general principle we do not suggest whether the seller must still pay commission if before closing the buyer becomes unable to carry out an agreed deal.[5]

Appellant contends, however, that the district court committed reversible error in each of three rulings on admissibility of certain evidence:

1. Excluding the earnest money agreement;

2. Permitting respondent-husband to testify that his conversations with appellant had led him to believe the listing agreement required actual sale before a commission would be due;

3. Permitting Linda Watkins to testify that she and her husband felt no bad feelings against respondents on account of failure to reach an agreement.

■ In rejecting the earnest money agreement, the district court committed

---

3. See Homefinders v. Lawrence, 80 Idaho 543, 335 P.2d 893 (1959); Frye v. Levanger, 76 Idaho 252, 281 P.2d 134 (1955).

4. "INSTRUCTION NO. 5
"You are instructed that the plaintiff's contract does not require him to negotiate a binding contract with the purchaser; it merely requires him to find a buyer ready and willing to enter into a deal at the stated price and terms or such other terms and price as the defendant (seller) may accept. However, if you find that this was a continuing transaction and that there was an attempt to find a purchaser on terms acceptable to the seller and not those stated in the contract, then such terms must be complied with even if it requires a completed sale so long as the seller acts in good faith.

"One of the questions of fact in this case, therefore, is whether the broker ever found a buyer ready, willing and able to purchase the property on the terms listed with the broker or on terms acceptable to the owner.

"If you determine the broker did not find a buyer ready, willing and able to purchase the property as aforesaid, then you should return your verdict in favor of the owner, that is the defendant in this case.

"If you determine that the broker did find a buyer ready, willing and able to purchase the property as aforesaid, then you should return your verdict in favor of the broker, that is the plaintiff in this case."

5. For a recent discussion of this question see Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 236 A.2d 843 (1967).

reversible error. The document, on which appellant himself had acknowledged or notarized the signatures, was offered in evidence to show that "there was a possible purchaser that [sic] was ready, willing and able to purchase the premises contracted with the owners of the property." The district judge denied admission of the document "because it was prepared by a notary that [sic] has a definite pecuniary interest in the outcome of the lawsuit. * * * A man cannot judge his own case." However, appellant contended, "that while the acknowledgment may not be valid, the contents should be submitted to the jury." Nevertheless the document was not admitted into evidence.

A contract to convey an interest in community real property must be signed by the wife and her signature must be acknowledged.[6] Respondents' listed property was community, and so if one of the parties to the sale provision of the earnest money agreement sought to enforce it as a contract of sale, the validity of its acknowledgment would be essential. But here we note that although a party directly interested in the subject matter of an instrument to convey cannot validly certify acknowledgment of signatures on the instrument,[7] it appears to be an open question whether a real estate broker who stands to receive a commission upon a conveyance of the subject matter can validly certify acknowledgment of such an instrument of conveyance. This Court has never considered the issue nor can we find any case from another jurisdiction that has determined the issue. But it is notable that in analogous situations some courts have held that an agent whose commission depends on execution of a document is not by that fact alone barred from validly

certifying acknowledgments necessary signatures to the instrument.[8]

However, it is unnecessary in the present action to decide whether appellant's certificate of acknowledgment of necessary signatures to the earnest money agreement was valid, and thus, we of course express no opinion on that issue. Even if, as the district court ruled, appellant's indirect interest in the subject matter barred him from acting as notary and therefore the document was void as between buyer and seller, it still should have been admitted. The document was offered not in an attempt to force a conveyance of the property described therein, but rather only as evidence that about the middle of May 1966, respondents and the Watkinses had reached a substantial meeting of minds concerning terms of sale. As such the document was probative that respondents at that time considered Watkinses ready and willing to purchase on terms acceptable to them, respondents.

The record indicates that the earnest money agreement was a central link in appellant's chain of evidence. If admitted, the document would not conclusively have established appellant's case, but it was probative of a material issue and might have swayed the jury to return a verdict for appellant. The judgment therefore must be reversed and the action remanded for a new trial.

Because the action must be remanded, it is well to consider certain issues that have been raised by the assignments of error and that may be presented again by the conduct of the new trial.

Appellant claims the trial court violated the parol evidence rule and thereby committed error by permitting respondent-husband to testify that he never read

6. I.C. § 32–912. West v. Brenner, 88 Idaho 44, 396 P.2d 115 (1964).

7. Knudsen v. Lythman, 33 Idaho 794, 200 P. 130 (1920) (mortgagee acknowledges signatures of mortgagors).

8. See United States Fidelity & Guar. Co. v. English Const. Co., 303 Mass. 105, 20 N.E.2d 939 (1939); Branch Inv. Co. v. Wooten, 198 N.C. 452, 152 S.E. 167 (1930); Harvard v. Davis, 145 Ga. 580, 89 S.E. 740 (1916); W. C. Belcher Land Mortgage Co. v. Taylor, 212 S.W. 647 (Tex.Com.App.1919); see also 1 C.J.S. Acknowledgments § 54(a) (1936); 1 Am. Jur.2d, Acknowledgments § 18 (1962).

the listing agreement and appellant had not read it to him, but appellant had told him the agreement provided that a commission depended on actual sale. Certain pertinent testimony by appellant himself should be presented here. Appellant said he first visited respondents on his own initiative, and

> "essentially I told them I had a prospective buyer who wanted to purchase * * a substantial buyer I think I told him, that wanted to purchase a farm similar to theirs, and I asked them if they wanted to sell their place and they indicated they would sell it.
>
> "Q What did they say?
>
> "A They said they would sell it and we discussed * * *. I asked them if they would give me a listing on the place because I felt I had a good buyer and we subsequently filled out form of real estate listing agreement."

Appellant also said he expected his commission would be paid from sale proceeds, and that this was normal procedure. Appellant's testimony also contains the following:

> "Q Do you recall, Mr. Rogers, having a discussion with Mr. and Mrs. Hendrix at their home when Mr. Hendrix asked you how you would get your commission. Do you recall anything about that conversation?
>
> "A I think we did discuss that, he would have the money out of the proceeds of this.
>
> "Q Exactly, and you explained to him that Watkins would pay you the money and you would make a closing statement

and you would take your fee out of the proceeds of that sale?

> "A That is correct.
>
> "Q So, therefore, you expected to be paid out of the proceeds of a sale. Isn't that true?
>
> "A That is true."

No error in the admission of evidence is ground for disturbing a judgment "unless refusal to take such action appears to the court inconsistent with substantial justice." [9] If the objecting party has himself earlier in the action presented evidence to the same effect as evidence erroneously admitted over his objection, such error will be deemed harmless.[10] Appellant's just quoted testimony sufficiently establishes the point to which respondent-husband addressed himself regarding the brokerage payment agreement that error in the admission of respondent-husband's testimony would be harmless.

 Further, the parol evidence rule does not require exclusion of testimony where a written brokerage agreement itself is not complete and unambiguous as a statement of all the transaction's details.[11] The fine print of the agreement of present concern requires commission if appellant found "a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept." But "said price and terms" are stated as $40,000.00, "29% down bal contract (negotiate) may consider a contract in trade." At the least, these terms may be read as demanding an acquiescence in negotiated terms by respondents and so their acceptance and recognition of some par-

9. Idaho R.Civ.P. 61.

10. See Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370 (1948); State v. Johnston, 62 Idaho 601, 113 P.2d 809 (1941); State v. Black, 36 Idaho 27, 208 P. 851 (1922).

11. See Maine v. Garvin, 76 N.M. 546, 417 P.2d 40 (1966); Roy Annett, Inc. v. Killin, 365 Mich. 389, 112 N.W.2d 497 (1961); cf. Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48

(1966); Boesiger v. DeModena, 88 Idaho 337, 399 P.2d 635 (1965); Wohlschlegel v. Holst, 81 Idaho 470, 346 P.2d 1051 (1959); Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844 (1942); Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264, (1934); Wood River Power Co. v. Arkoosh, 37 Idaho 348, 215 P. 975 (1923); Johansen v. Looney, 30 Idaho 123, 163 P. 303 (1917); see also Shiya v. National Comm. of Gibran, 381 F.2d 602 (2d Cir. 1967).

ticular buyer presented to them by appellant, before the commission would be due.

Thus, insofar as respondent-husband was permitted to testify that commission depended on a completed, proceeds-producing sale, it was error because in direct conflict with the written agreement; but in the present circumstances that error was harmless. However, testimony to the effect that the fluidity of the stated terms of sale necessarily indicated that respondents had to recognize and accept terms offered by a particular buyer before commission was due would be properly admissible evidence since tending to explain incompleteness and ambiguity in the listing agreement.

■ Next, concerning the challenged testimony of Linda Watkins, that no bad feeling existed between Watkinses and respondents because the sale fell through, the court did not err by admitting the testimony over appellant's objection to its materiality. The testimony was probative of an important issue, whether respondents had negotiated in a reasonable manner with the Watkinses. As a party to the sale transaction, Linda Watkins had been in position to observe respondents' behavior in this regard.

■ It also appears worthwhile on this record to remind that a real estate broker is a fiduciary of his principal.[12] Because of this position of trust, argument by the broker with his principal to rewrite the terms of sale in order to close a deal must be closely scrutinized to determine if the alterations are for the principal's best interests or if, to the contrary, they are intended primarily to force a sale at any cost. Though we cannot say appellant's conduct as disclosed by this record amounted to bad faith, nevertheless appellant obviously initiated some attempted renegotiation of agreements. At the least, if the evidence at the new trial so indicates, respondents should be benefited by appellant's apparent renegotiations of the commission obligation agreement, i. e. his offer to deduct $400.00 to $500.00 to pay certain interest and perhaps even to cut his commission by $400.00 for a quick sale. Of course if it should develop that appellant acted in bad faith contrary to the best interests of respondents, appellant should receive no commission.[13]

Judgment reversed; action remanded for new trial.

Costs to appellant.

TAYLOR, McFADDEN, and SPEAR, JJ., concur.

YOUNG, District Judge (concurring specially).

I concur in the result reached and in the holding that it was error to deny admission of the earnest money receipt. However, I am still of the opinion that the testimony of the respondent contradicts the clear and unambiguous language of the listing agreement, insofar that it relates to the conditions upon which a commission would be due, and thus is a violation of the parol evidence rule.

12. See McShane v. Quillin, 47 Idaho 542, 277 P. 554 (1929); cf. Ellsworth Dobbs, Inc. v. Johnson, supra n. 5; Valley Land Office, Inc. v. O'Grady, Wash., 432 P. 2d 850 (1967).

13. Cf. McShane v. Quillin, supra n. 12.